Dan GRIFFIN, Appellant,

v.

W. W. MOON, d/b/a Bond Securities Co.,
Appellee.

No. 15062.

Court of Civil Appeals of Texas.
Dallas.

March 1, 1956.

Rehearing Denied March 30, 1956.

Gragg & Storey, Dallas, for appellant.

Joseph W. Geary, Jr., Dallas, for appellee.

CRAMER, Justice.

Appellee Moon as plaintiff filed this suit in the District Court against Griffin for the title and possession of a certain Pontiac 1950 sedan coupe automobile hereinafter referred to as Pontiac. It appears that on January 12, 1952 Griffin purchased a Pontiac from the Bob Crudington Auto Company of Amarillo; that Company had acquired the Pontiac from L. L. Nixon and later received the following certificate of title and license receipt from Nixon, to wit:

Thereafter in the last of April and early part of May, Griffin turned the Pontiac over to a Mr. Wylie for the purpose of sale. About a week or ten days later the above certificate of title and tax receipt were delivered to Wylie; thereafter the

546

Pontiac together with the certificate of title came into possession of H. E. Robertson who theretofore had dealings with appellee Moon, selling his automobiles off of a dealer's lot where he was working; later appellee Moon purchased and was delivered possession of the Pontiac and the above certificate of title and receipt. Robertson then gave his check for $650 in payment therefor. Later Robertson returned to Moon and requested permission to sell the Pontiac and the Pontiac was delivered to Robertson. However the certificate of title and license receipt were retained by Moon. About two weeks later the Pontiac was returned to Robertson at which time Robertson told appellant Griffin the title papers had been lost. Appellee Moon testified he discussed the situation with appellant Griffin about a week after the transaction and before the Pontiac had been disposed of; that Robertson came into his office and saw appellant Griffin. Appellant Griffin also testified that he first learned appellee Moon was claiming title to the car in July 1952. Griffin was at all times involved here and after January 1952, a resident of Texas. On July 9, 1952 Griffin registered the automobile in Columbus, Georgia, showing his address as Box 1708, Columbus, Ga., later in September 1952 Griffin procured a Texas title based on the Georgia registration and sold the Pontiac to Loop Pontiac, a dealer. On May 16, 1952 appellee Moon was a licensed dealer.

On the above record the trial court entered judgment for appellee Moon for the sum of $650 and appellant Griffin has duly perfected this appeal, here briefing four points of error, in substance: Error of the trial court in rendering judgment for Moon because the undisputed evidence shows (1) the assignment of the certificate of title under which Moon claimed was never completed in full or dated, but was signed by Moon in blank, not acknowledged or sworn to, certificate was not filled out except for the undated signature of the Notary Public plus his seal thereon, contrary to the laws of the State of Texas; (2) the undisputed evidence shows that neither Griffin as owner nor Robertson as purchaser at the times involved here ever applied for or obtained a certificate of title before the transfer; (3) the undisputed evidence shows the automobile in question contained a motor which had no motor number thereon and that Moon knew that fact before he claims to have acquired title thereto; and (4) the undisputed evidence shows no one made an affidavit that he was the owner of the automobile in question prior to, or at the time he alleges he acquired such title.

Appellees brief the negative view to each of appellant's points, to wit: The fact that the certificate of title delivered to appellee and that appellee failed to comply with Arts. 1435, 1431 and 1436–1, secs. 27, 33, 51, 52, and 53, of the Penal Code, Vernon's Ann.P.C. arts. 1435, 1431, 1436–1, §§ 27, 33, 51, 52, 53, bars appellant from a recovery herein.

Under the above record we must hold that under the express provisions of our Certificate of Title Act each of the transactions involving the Pontiac,—by Nixon with Bob Crudington Auto Company or Griffin, Griffin with Wylie, Griffin or Wylie with Robertson, Robertson with Moon, were void and passed no title.

While a dealer is not required to take and pass title in the manner prescribed between sellers and purchasers for the ordinary use of the automobile, each dealer here is charged with the knowledge of the prior and subsequent sales which he handled and was charged as a matter of law with such knowledge that the seller had a Certificate which would pass no title, and knew, or by statute was charged with such knowledge, that the buyer was getting a Certificate that would pass no title under our statute. Article 1436–1, Penal Code, sec. 8, defines "subsequent sale"; sec. 10 defines a "used car"; and sec. 24, a " 'Certificate of Title.' " Secs. 27 and 32 provide for an application for a Certificate of Title before sale and its issuance. Sec. 33 provides: "No motor vehicle may be disposed of at subsequent sale unless the owner designated in the certificate of title shall transfer the certificate of title on form to be prescribed by the Department before a

Notary Public, which form shall include, among such other matters as the Department may determine, an affidavit to the effect that the signer is the owner of the motor vehicle, and that there are no liens against such motor vehicle, except such as are shown on the certificate of title and no title to any motor vehicle shall pass or vest until such transfer be so executed."

Secs. 34 and 36 provide for a new Certificate when all the forms on the Certificate have been used; for a transfer by operation of law as by inheritance, etc.; and in case of destruction, etc. Sec. 49(a) prohibits alteration or forgery of such Certificate or the change or mutilation for the purpose of changing the identity of any motor, serial, etc., number placed on said vehicle, or placing thereon any number other than the one assigned thereto by the Highway Department as provided by law. The Act also provides penalty for any violation of any part thereof; also for having in his possession a motor vehicle, motor, motor block, or any part thereof placed on same by the manufacturer for identification which has been changed, altered, erased, or mutilated for the purpose of changing the identity thereof; provides for any peace officer finding any one in possession of such a motor vehicle, etc., and hold the same for a sufficient length of time to establish identity and make the necessary investigation to determine ownership; provides for the Highway Department to assign a number where none has been placed thereon by the manufacturer and for such number to be stamped thereon by the applicant.

Secs. 51 and 52 declare it unlawful to buy or acquire any title other than a lien "without then and there demanding of the proposed seller the registration receipt and certificate of title" which shall be transferred upon such form as may be provided by the Department; and that all sales made in violation of this Act shall be void, and no title shall pass until the provisions of this Act have been complied with; and provide a penalty for the violation of any provision of the Act.

The rule is stated correctly in 5 SW Law Journal 428–429 as follows: "It seems clear, from the language used in the statute, that an application for a certificate of title is a condition precedent to the right to transfer a vehicle in a 'subsequent sale.' The Act provides: 'Before selling or disposing of any motor vehicle required to be registered or licensed in this State on any highway or public place within this State, except with dealer's metal or cardboard license number thereto attached as now provided by law, the owner shall make application to the designated agent in the county of his domicile upon form to be prescribed by the Department for a certificate of title for such motor vehicle.' The Act further declares that no motor vehicle may be disposed of at a 'subsequent sale' unless the owner shall make 'an affidavit to the effect that the signer is the owner of the motor vehicle, and that there are no liens against such motor vehicle, except such as are shown on the certificate of title and no title to any motor vehicle shall pass or vest until such transfer be so executed.' This prohibits a 'subsequent sale' without the required execution of transfer before a notary public, and indicates that failure to obtain a certificate of title will prevent a vendee from acquiring legal title. Furthermore, it is made unlawful to sell or execute a contract lien on a vehicle registered or licensed in the state without having in possession the proper receipt or certificate of title covering the vehicle. It is also made unlawful to buy or acquire any title, other than a lien, to any vehicle registered or licensed in the state, without demanding of the seller the registration receipt or certificate of title."

In Elder Chevrolet Co. v. Bailey County Motor Co., Tex.Civ.App., 151 S.W. 2d 938, 942, cited in the above Article at page 431, there were involved several transactions in which all parties ignored the Certificate of Title Act. The court there, material here, stated: "To hold that title did pass would be in the face of a statutory provision that is too plain to require construction. It is not contended that the

Legislature did not have the power under the Constitution to pass this law." We must therefore hold that each party, including Moon, knew, or was charged with knowledge of, the condition of the Nixon Certificate of Title at the time he was involved in the transactions here in issue, and that the Certificate of Title involved in such transactions· was signed in blank by Nixon and by the Notary who attached his seal after·his signature, and passed no title; and that all such transactions are in violation of the criminal provisions of the statute, and therefore void. We further hold that under the record here, both Griffin and Moon had knowledge of the condition of the title at the material times here involved.

Under such circumstances the Courts will leave the parties where they found them.

For the reasons stated, judgment of the trial court is reversed and judgment is here rendered that this entire proceeding be dismissed with prejudice.