RADCLIFF FINANCE CORPORATION V. CITY MOTOR SALES, INCORPORATED ET AL.

No. A-7038. Decided April 29, 1959.
(323 S.W. 2d Series 591)

1.—See also City of Arlington v. Cannon, 153 Texas 566, 271 S.W. 2d 414.

*H. A. Crawford,* of Houston, for Petitioner.

*Robert L. Sonfield* and *Abe Levy,* for J. Caruthers, *Seymour Lieberman,* all of Houston, for respondents.

MR. JUSTICE WALKER delivered the opinion of the Court.

This is a controversy over the title to a 1953 Cadillac automobile purchased by J. Caruthers, hereinafter referred to as respondent, from City Motor Sales, Inc. The latter will be referred to in this opinion as City Sales. Radcliff Finance Corporation, petitioner, brought the suit against City Sales and respondent to recover on a note executed to it by City Sales and foreclose a chattel mortgage on the automobile. After a trial

before the court without a jury, judgment was entered in favor of petitioner and against City Sales for the amount owing on the note, but respondent was awarded title and possession of the automobile free and clear of the lien claimed by petitioner. The Court of Civil Appeals affirmed. 316 S.W. 2d 170.

The note and chattel mortgage were executed to petitioner by City Sales after the latter had sold the automobile to respondent, and the principal question presented by the appeal is whether such sale was made in violation of the Certificate of Title Act, Art. 1436-1, Vernon's Ann. P.C., hereinafter referred to either as the Act or by section number without further identification. In our opinion the present record does not show that the sale violated any provision of the Act, and the judgment of the Court of Civil Appeals will be affirmed.

About two weeks after the sale to respondent, City Sales executed its note to petitioner secured by a chattel mortgage on the automobile, and petitioner paid the draft and obtained possession of the Wisconsin title. Some two months later, the Texas Highway Department issued a "warning" certificate of title showing City Sales as owner and the lien in favor of petitioner. Early in 1954 another Texas title was issued for a 1953 Cadillac showing respondent as owner and reflecting no liens, but the motor number appearing on this title is not the true number of the vehicle sold to respondent.

■ The briefs are devoted primarily to the question of whether the transfer from City Sales to respondent was a subsequent sale as contended by petitioner rather than a first sale as held by the trial court. "First sale" is defined by Section 7 as the transfer of a vehicle which has not been previously registered or licensed in this state or elsewhere. The Cadillac had previously been licensed in Wisconsin, and the sale to respondent could not be a first sale within the present definition of that term. Since the parties do not contend otherwise, we shall assume that the trial court was correct in its conclusion that the vehicle had been the subject of a first sale in Wisconsin. It was, therefore, a used car under the provisions of Section 10.

"Subsequent sale" is defined by Section 8 as the transfer "of a motor vehicle which has been registered or licensed within this state or elsewhere, *save and except when such vehicle is not rquired under law to be registered or licensed in this State* * * * *." Respondent relies on the italicized exception and argues that the transaction in which he acquired the Cadillac was not

a subsequent sale because the vehicle was not required to be registered or licensed while owned by City Sales. We do not think this is the meaning or effect of the exception.

Section 27 deals with a motor vehicle "required to be registered or licensed in this State on any highway or public place in this State, except with dealer's metal or cardboard license number thereto attached as now provided by law," and provides that the owner shall make application for a certificate of title before selling or disposing of such a vehicle. In Motor Inv. Co. v. Knox City, 141 Texas 530, 174 S.W. 2d 482, it was held that manufacturers and dealers who use their vehicles only for the purposes permitted by Art. 6686, Vernon's Ann. Texas Civ. Stat., are not required by Section 27 to apply for a certificate of title as a condition precedent to the right to transfer same. The opinion rests this holding upon two entirely separate propositions: (1) that vehicles permitted by law to be operated with dealer's metal or cardboard license number attached are excepted from the provisions of Section 27, and under the terms of Art. 6686 a manufacturer or dealer is authorized to demonstrate his vehicles upon the highway with a dealer's license number attached and need not register the same separately; and (2) that only an "owner" is required by Section 27 to apply for a title before selling his vehicle, and the term "owner" as defined by Section 4 excludes manufacturers and dealers, and includes only those claiming title after the first sale. It was then held that each of the transactions there involved was a first sale.

We did not hold or say that a dealer-owned vehicle, which is exempt from separate registration under the provisions of Art. 6686, is not a "motor vehicle required to be registered or licensed in this State" within the meaning of Section 27. On the contrary, it was pointed out that the Act does not designate what vehicles are required to be registered or licensed in this State, and that this information is supplied by Art. 6675a-2, Vernon's Ann. Texas Civ. Stat. That statute provides that all self-propelled vehicles except farm tractors, farm trailers and other implements of husbandry shall be registered with the State Highway Department before they are operated on the public highways. The Knox City case does not, therefore, support the construction of Section 8 which is now urged by respondent.

"Motor vehicle" is defined by Section 2 as every kind of motor-driven or propelled vehicle "now or hereafter required to be registered or licensed under the laws of this State." As originally enacted, Section 60 provided that the Act would not apply

to motor vehicles not required to be registered or licensed under the laws of this State "then effective." The purpose of this provision was to exempt any *kind* of vehicle which, although subject to registration under some prior law, was not required to be registered or licensed at the time it was sold or mortgaged.

The reference to vehicles not required to be registered or licensed under the laws of this State was omitted when Section 60 was amended in 1947, but four years later substantially the same language was used in stating the exception to Section 8 mentioned above. Its meaning in the latter context is no different from that which it had in the former. The exception refers to a type of vehicle that is not required to be registered in this State at the time it is sold. To adopt the construction of Section 8 urged by respondent, it would be necessary to say that the transaction in which he acquired the Cadillac was neither a first sale nor a subsequent sale, and in our opinion the Legislature intended for these two terms when taken together to embrace every Texas transfer of any kind of motor vehicle that is required by the laws of this State in effect at the time of the sale to be registered by an ordinary owner for use on the highway. The sale of such a vehicle after it has been registered or licensed in this State or elsewhere is a subsequent sale even though the same may be exempt from registration in the hands of the seller. We hold, therefore, that the transfer from City Sales to respondent was a subsequent sale within the meaning of Section 8.

It does not necessarily follow, however, that petitioner is entitled to prevail under the facts of this case. The term "subsequent sale" appears at several places in the Act, but the only section containing that expression and which might affect the rights of the parties here is Section 33, which provides that no vehicle may be disposed of at subsequent sale unless the owner designated in the certificate of title transfers the certificate in the manner there prescribed. This obviously refers to a transfer by the owner designated in a Texas certificate of title, and the section is not applicable when such a title has not been, and is not required to be, applied for or obtained.

■ Petitioner had the burden of proving the facts necessary to establish the validity of its lien, and it does not appear that a Texas title for the Cadillac was issued or applied for, or that the vehicle was registered in this State, before the draft was paid by petitioner. The person who brought the automobile into Texas for sale was an importer as defined by Section 17. An

automobile brought into the state by a manufacturer or importer is expressly excepted from the provisions of Section 30 requiring that application be made for a certificate of title before an imported vehicle is sold or encumbered. As previously indicated, a dealer is not required by the provisions of Section 27 to apply for a certificate of title before disposing of a vehicle used only for the purposes permitted by Art. 6686. The holding of the Knox City case on that question applies to used as well as to new cars. A dealer who has a dealer's license number is also exempt from the requirement of Art. 1434, Vernon's Ann. P.C., that a used car be registered in this State for the current year before it is sold. See Texas Automotive Dealers Ass'n v. Harris County Tax Assessor-Collector, 149 Texas 122, 229 S.W. 2d 787.

City Sales was a dealer within the meaning of Art. 6686, and the evidence shows that respondent operated the Cadillac for some time with cardboard license numbers attached. There is nothing in the record to suggest that prior to the sale to respondent an interest in the automobile was acquired or owned in this State by anyone who was not such a dealer, or that the vehicle was ever used here for a purpose not permitted by Art 6686. We thus do not have the question that was presented in Guinn v. Lokey, 151 Texas 260, 249 S.W. 2d 185, where an automobile was sold to a dealer by one who was required to apply for a certificate of title before disposing of same. On the facts disclosed by this record, there is nothing in the Act requiring that a certificate of title be applied for, obtained or transferred either prior to or in connection with the sale to respondent, and we must assume that the Cadillac was not registered in Texas at the time of such sale. Under these circumstances Sections 51 and 52, which were quoted and given effect in the Guinn case, are not applicable.

■ The Legislature evidently intended for an importer's certificate to play somewhat the same role in the transfer of an imported vehicle as a manufacturer's certificate does in the case of a new car. See Sections 23 and 29. It will be noted, however, that neither the issuance nor the assignment of such a certificate is prescribed as a necessary prerequisite to the validity of a sale. Since the transfer from City Sales to respondent did not violate any provision of the Act, the latter thereby acquired whatever title was then owned by the former. If City Sales had legal title at the time, such title as well as possession of the vehicle passed to respondent, and the former could not thereafter create an

effective lien on the automobile in favor of petitioner. Motor Inv. Co. v. Knox City, supra.

On this record we cannot determine as a matter of law when title passed in the sale from Glaspie to City Sales, and there is no specific finding on that question. The findings and conclusions indicate, however, that the trial court proceeded on the theory that City Sales may not have owned the automobile when it sold to respondent. Even if title was not acquired by City Sales until the draft was paid, the same immediately inured by estoppel to the benefit of respondent, Brinkman v. Rick, Texas Civ. App., 19 S.W. 2d 808 (wr. ref.), and the question of whether the prior purchaser of a chattel ordinarily holds the same subject to a purchase money lien given by his seller as part of the transaction in which the latter acquires title need not be decided here.

Section 41 provides that no lien shall be valid on a motor vehicle "which is hereafter the subject of a first sale" unless the date, name and address of the mortgagee are noted on the importer's or manufacturer's certificate. Although the Act does not expressly recognize successive transfers of an importer's certificate as it does in the case of a manufacturer's certificate, the Legislature plainly intended for the former to disclose all contract liens acquired from the transferee in any sale occurring prior to the time a certificate of title must be applied for or obtained.

As originally enacted the statute undoubtedly required a lien such as that claimed by petitioner to be shown on the importer's certificate, but the meaning of Section 41 is not as clear since Sections 7, 8 and 9 were amended in 1951. Under the terms of Section 23, an importer's certificate is issued only for a used car, but a used car cannot be the subject of a first sale as that term is now defined by Section 7. If Section 41 applies only to transactions which constitute first sales within the present meaning of Section 7, the requirement that a lien be noted on an importer's certificate is wholly ineffectual and our law affords a purchaser no protection against secret liens created on a used car after it is brought into the State for sale and before it is required to be titled.

One of the declared purposes of the Act is to prevent the sale of encumbered vehicles without the enforced disclosure of all liens thereon, and the Legislature has directed that its provisions be liberally construed to that end. We cannot believe that in amending Sections 7, 8 and 9, the lawmakers intended to do

away with the provision already made for disclosure of a lien created in connection with the sale of an imported vehicle where no certificate of title is required. In our opinion Section 41 still applies to any transfer of either a new vehicle or a used car brought into the State for sale up to and including its sale to the first person who is required by the Act to apply for or have a certificate of title. We agree with the trial court that the transfer to City Sales was a first sale within the meaning of that Section, and that petitioner's failure to comply with the provisions thereof renders its lien invalid and unenforceable.

The evidence shows that the Highway Department no longer requires an importer's certificate to be substituted with an application for title because of the difficulty it has experienced in determining whether a particular vehicle was actually brought into the State for sale. Petitioner argues that the authority to do this is conferred by Section 55, but the power of the Department to waive submission of a certificate is not the question here. The provisions of Section 41 certainly are not abrogated by the departmental rule or practice in that respect.

The judgment of the Court of Civil Appeals is affirmed.

Associate Justice Griffin dissenting.

Associate Justice Hamilton not sitting.

Opinion delivered April 29, 1959.