DRAKE INSURANCE COMPANY,
Petitioner,

v.

Tommy Paul KING et al., Respondents.

No. B–9080.

Supreme Court of Texas.

Oct. 8, 1980.

Rehearing Denied Nov. 12, 1980.

Wagstaff, Harrell, Alvis, Batjer, Stubbeman & Seamster, David G. Stubbeman, Abilene, for petitioner.

Turner, Seaberry & Warford, Virgil T. Seaberry, Jr., Eastland, Malcolm Schulz, Abilene, for respondents.

SPEARS, Justice.

The State of Texas filed an "Inventory of Property Seized" in district court pursuant to article 6687–1 § 49(d)[1] to determine ownership of a 1973 GMC truck–tractor. Three parties intervened, each asserting ownership of the truck–Drake Insurance Company, Jonah Finley, and Tommy King. After a nonjury trial, the court awarded title and possession of the truck to King, as a bona fide purchaser, and granted Drake a recovery of $2,000 against Finley. The court of civil appeals affirmed the judgment for King but reversed Drake's judgment against Finley. 600 S.W.2d 836, 837. Drake Insurance is our petitioner. We reverse the judgments of the courts below and render judgment that Drake Insurance is the owner of and entitled to the truck. King's cross–action against Finley is severed and remanded to the trial court.

On March 15, 1977, Richard League was in possession of the truck. When it broke down, League engaged Finley, doing business as City Garage and possessing a dealer's license, to repair it. The truck immediately broke down again, and League then stored it with Finley until July 6 when League sold it to Finley for $2,000. League gave Finley a bogus Indiana certificate of title containing a barely readable vehicle identification number (VIN) that did not match the true VIN stamped on the frame of the truck. Finley then made repairs valued by the trial court at $10,560.63 on the truck, and on August 24, sold the truck to King for $14,254.37. Finley did not apply for a Texas certificate of title on the truck, but instead transferred the Indiana certificate of title to King by endorsement. The truck was seized by the State as a stolen vehicle on October 10, 1977, and this action followed in January, 1978.

Finley claims ownership of the truck as an innocent purchaser from League. Alternatively Finley prays for a judgment for $10,560.63, the value of his repairs to the truck. Tommy King claims ownership as innocent purchaser for value from Finley. Both Finley and King rely upon Tex.Bus. & Com.Code Ann. § 2.403 and § 9.307.

Drake Insurance alleged that the truck had belonged to Rento, Inc., and was insured against theft by Drake. When Rento reported the truck stolen, Drake paid Rento $13,500 and Drake received the transfer of a Virginia certificate of title to the truck. The validity of Drake's Virginia certificate of title, dated April 10, 1978, is not questioned.

The trial court made numerous findings in support of its judgment that King was a bona fide purchaser and that Finley had sold the truck to King in the good faith belief that he, Finley, had good title to the truck. Those findings are quoted in the opinion of the court of civil appeals. See 600 S.W.2d 837. Petitioner Drake asserts that there is no evidence to support the trial court's findings that League was the owner of the truck or that Finley acquired title to it from League in good faith in the usual course of business with the transfer of the Indiana certificate of title. We agree with Drake's contentions.

The VIN shown on the Indiana certificate of title is barely legible, but reflects a serial number on a truck which was located in a salvage yard in a northern state. According to the testimony of the investigator in the Motor Vehicle Theft Section of the Department of Public Safety, the VIN shown on the Indiana certificate had been stamped on the frame of the truck in question here by someone other than the manufacturer. The true VIN stamped on the frame by the manufacturer and matching that of the Virginia certificate of title held by Drake was located by the investigator. The truck had been reported stolen by the National Auto Theft Bureau on September 17, 1976.

1. All references to statutes are to Texas Revised Civil Statutes Annotated, unless otherwise indicated.

The questions presented are whether the trial court's finding that Finley and King were innocent bona fide purchasers for value (1) is supported by any evidence, and (2) if that finding is supported by some evidence, does their claim for title prevail over that of the holder of a valid certificate of title, Drake.

■ In this state, the transfer of title to a motor vehicle upon a sale is regulated by the Texas Certificate of Title Act, article 6687–1 et seq.[2] The legislative history of the Act, originally passed in 1939, reflects that the purpose of the Act was to replace the previous method of transferring vehicles by bill of sale with a Certificate of Title Act administered by one central statewide agency. The change was believed necessary to prevent the sale of stolen vehicles and to protect a lienholder's security interest from defeasance. *See* Couch, *Commentary on the Texas Certificate of Title Law* (formerly art. 1436–1), Texas Penal Code, Vol. 3, pp. XII–XXXIX (Vernon 1953). Section 1 of the Act indicates the legislative intent:

> This act shall be referred to, cited and known as the "Certificate of Title Act," and in the enactment hereof it is hereby declared to be the legislative intent and public policy of this state to lessen and prevent the theft of motor vehicles ... and the importation into this state of, and traffic in, stolen motor vehicles ... and the sale of encumbered motor vehicles ... without the enforced disclosure to the purchaser of any and all liens ... and the provisions hereof, singularly and collectively, are to be liberally construed to that end....

■ The Act is intended to be a comprehensive and complete scheme for the regulation of the transfer of title to a motor vehicle when a sale has been made. Section 33 provides:

> Sec. 33. *No motor vehicle may be disposed of at a subsequent sale unless the owner designated in the certificate of title transfers the certificate of title* on a form prescribed by the Department before a Notary Public. This form shall include, among such other matters as the Department may determine, an affidavit to the effect that the signer is the owner of the motor vehicle, and that there are no liens on the motor vehicle, except such as are shown on the certificate of title or are fully described in the affidavit. *No title to any motor vehicle shall pass or vest until the transfer is so executed.* (emphasis added).

■ Since the truck had been previously registered in another state, any sale in Texas would have been a subsequent sale. Art. 6687–1 § 8; *Radcliff Finance Corp. v. City Motor Sales, Inc.*, 159 Tex. 493, 323 S.W.2d 591, 595 (1959).

To reduce the traffic of selling stolen vehicles brought into this state, the Act provides a clear and explicit procedure in Sec. 30:[3]

> Sec. 30. (a) Before any motor vehicle which was last registered and titled, or registered in some other state or country may be registered and titled in Texas, *the applicant shall furnish to the designated agent a certificate from a duly constituted peace officer in the form prescribed by the Department, certifying that such officer has made a physical examination of the motor number and serial number, or the permanent identification number of the motor vehicle.* The said peace officer will certify that he has made a physical examination of the motor number and serial number, or permanent identification number, and note the correct numbers on said form. *No designated agent shall accept any application for registration and a certificate of title until the provisions of this Section have been complied with*; and further, no designated agent shall accept an application for registration and a certificate of title if the

---

**2.** Referred to as the "Act."

**3.** Section 30(a) was amended in 1979, subsequent to the transactions and events occurring

in this case. Tex.Rev.Civ.Stat.Ann. art 6687–1 § 30(a) (Vernon Supp.1980).

said numbers on the peace officer's certification do not agree with the motor number and serial number, or permanent identification number, shown on the evidence of ownership papers presented by the applicant for registration and a certificate of title. The certificate of examination of the said motor and serial numbers, or permanent identification numbers, issued by the duly constituted peace officer shall become a part of the evidence of ownership to accompany the owner's application for a certificate of title and the Department may not issue a certificate of title unless and until these provisions have been complied with.

(b) Before any motor vehicle brought into this State by any person, other than a manufacturer or importer, and which is required to be registered or licensed within this State, can be bargained, sold, transferred, or delivered with intent to pass any interest therein or encumber by any lien, *application on form to be prescribed by the Department must be made to the designated agent of the county wherein the transaction is to take place for a certificate of title*, and no such designated agent shall issue a receipt until and unless the applicant shall deliver to him such evidence of title as shall satisfy the designated agent that the applicant is the owner of such motor vehicle, and that the same is free of liens except such as may be disclosed on an affidavit in form to be prescribed by the Department. (emphasis added).

\* \* \* \* \* \*

Finally, sections 51 and 53 invalidate any attempted sales when the Act is not complied with.

Sec. 51. It shall hereafter by unlawful for any person, either by himself or through any agent, to offer for sale or to sell or to offer as security for any obligation any motor vehicle registered or licensed in this State without then and there having in his possession the proper receipt or certificate of title covering the motor vehicle so offered.

Sec. 53. All sales made in violation of this Act *shall be void and no title shall pass* until the provisions of this Act have been complied with. (emphasis added).

When Finley purchased the truck from League on July 6, he received the bogus Indiana certificate of title from League.[4] Finley then endorsed the name of his business, City Garage, on the back of the certificate as the dealer–purchaser. Finley testified that one of his employees had taken the Indiana title to the county tax assessor–collector, who was the designated agent charged with administering the Certificate of Title Act in that county. Over Drake's objections, Finley testified that his employee was told by the county tax assessor–collector that the Indiana title would serve as a basis for obtaining a Texas title. Of course this was hearsay, and was admitted by the trial court solely as it related to Finley's good faith in the transaction.

 It is undisputed that League did not apply for a Texas certificate of title before selling the truck to Finley as required by § 30 and § 33 of the Act. Had League applied for a Texas certificate of title, he would have necessarily furnished with his application a certificate from a peace officer showing the VIN of the truck obtained by physical examination of the truck. League's failure to comply with the Act rendered the attempted transfer to Finley void under the terms of § 53. Because Finley knew of League's failure to comply with the Act, Finley was charged with knowledge that League had a certificate which would pass no title. *Griffin v. Moon,*

---

4. The original Indiana certificate of title was not made a part of the record in this court; only a photocopy was included in the exhibits. Finley described the original title, however, as being "wore out," with scotch tape over the identification number and over the name of the owner. Finley testified that he "questioned" the validity of the title and that is why he had it taken to the tax assessor–collector's office to have it checked. The current year's registration receipt had been "lost." Finley never checked the VIN of the truck with that on the certificate. The copy of the Indiana certificate in the record clearly shows that it has been altered.

288 S.W.2d 543, 546 (Tex.Civ.App.–Dallas 1956, no writ). One who purchases a motor vehicle which has been imported into Texas, whether for sale or for use, has a duty to investigate and see that the seller has complied with the Texas Certificate of Title Act. *Mossler Acceptance Co. v. Burke*, 252 S.W.2d 749, 751 (Tex.Civ.App.–Galveston 1952, writ ref'd, n.r.e.); *Deahl v. Thomas*, 224 S.W.2d 293, 296 (Tex.Civ.App.–Amarillo 1949, writ ref'd n.r.e.); *Ball v. Sorenson*, 191 S.W.2d 908, 912 (Tex.Civ.App.–Fort Worth 1945, no writ).

Since Finley failed to see that the Act was complied with, he acted at his own peril and was not a bona fide purchaser. *Guinn v. Lokey*, 151 Tex. 260, 249 S.W.2d 185, 189 (1951); *Boswell v. Connell*, 556 S.W.2d 624, 626 (Tex.Civ.App.–Beaumont 1977, writ ref'd n.r.e.). It was not until Finley attempted to sell the truck to King, and King's application for title based on the bogus Indiana title was turned down by Texas authorities that Finley sought to comply with the statute. At that time the peace officer checked the VIN and reported that the true VIN on the truck did not match the VIN on the Indiana certificate. Under these facts, Finley could not have been a bona fide purchaser. Finley would have undoubtedly learned that the truck was stolen and that the Indiana certificate of title was false by seeing that § 30(a) and (b) were complied with.

■ Even though League was required to comply with the provisions of § 30, we have noted that Finley as a buyer and as a dealer also had a duty to see that the provisions of § 30 of the Act were complied with. As this Court said in *Texas Automotive Dealers Ass'n, Inc. v. Harris County Tax Assessor–Collector*, 149 Tex. 122, 229 S.W.2d 787 (1950):

We have seen that the proper evidence of title for a dealer with dealer's license may be a certificate of title or license not in his name, except by indorsement. Upon a purchase of a used or secondhand motor vehicle the seller must transfer to the dealer a current years license registration receipt and a Certificate of Title in the name of the seller properly indorsed to the dealer and covering the motor vehicle sold, *and it is the dealer's duty to demand and receive such documents before he buys the motor vehicle.* (Emphasis added.)

■ There is yet another reason the sale from League to Finley is void. It is well–settled that a forged certificate passes no title. *McKinney v. Croan*, 144 Tex. 9, 188 S.W.2d 144 (1945); *Anaya v. Jacaman*, 505 S.W.2d 952 (Tex.Civ.App.–San Antonio 1974, no writ); *Yousey v. Bogle*, 457 S.W.2d 595 (Tex.Civ.App.–Waco 1970, writ ref'd n.r.e.); *Beauchamp v. Nichols*, 278 S.W.2d 535 (Tex.Civ.App.–Amarillo 1954, no writ). The record clearly demonstrates that the Indiana certificate of title was an invalid, bogus certificate. Moreover, there is no evidence that League was ever the owner of the truck or that he ever held a valid certificate of title to the truck; the evidence merely shows that League *possessed* the truck.[5] Finley contends that Drake's original petition in intervention contained a judicial admission that League was the owner which constitutes some evidence that League owned the truck. Drake, however, subsequently filed a first and then a second amended petition in intervention, alleging that Drake received its title by transfer from Rento, Inc. The original petition of Drake was thus superceded by the amended petitions and no longer constituted a pleading in the case. Rule 65, Tex.R.Civ.P. Having been superceded, it was no longer a judicial admission, but must be introduced into evidence as any other admission before it may be considered as evidence. *Kirk v. Head*, 137 Tex. 44, 152 S.W.2d 726 (1941); 1A R. Ray, Texas Law of Evidence § 1146 (Texas Practice 3rd ed. 1980).

■ Since League's attempted transfer to Finley was void, Finley had no title to transfer to King. Moreover, because King was accepting a vehicle with an out–

---

**5.** After King's application for a certificate of title was denied by the Department, Finley found in the cab of the truck a copy of a lease agreement between League and a third party.

of–state title, King was charged with compliance with the provisions of § 30(a) and (b) before he paid Finley any money. Not having so complied, the attempted transfer from Finley to King was void. *Reeb v. Danley,* 221 S.W.2d 579, 582 (Tex.Civ.App.–San Antonio 1949, no writ). Since the sale was void, the consideration for the sale fails. *Robinson v. Densman,* 470 S.W.2d 451, 453 (Tex.Civ.App.–El Paso 1971, writ ref'd n.r.e.). Since King has already paid Finley $14,254 for the truck, any cause of action King may have is against Finley. King's cause of action, however is subject to any lawful offsets resulting from the use of another truck given King by Finley to use after the truck in question was seized by the state.

 It is undisputed that Drake holds the only valid certificate of title to the truck. That the certificate was issued by Virginia after the League–Finley–King transactions is immaterial. As the holder of the valid certificate of title, Drake is entitled to ownership and possession of the truck, as against two purchasers for value who have not complied with the provisions of the Act. *Boswell v. Connell, supra.*

■ We do not agree with Finley's contention that he is entitled to ownership of the truck because of the accessions he added to the truck. Finley relies on *Ochoa v. Rogers,* 234 S.W. 693, 694 (Tex.Civ.App.–Dallas 1921, writ dism'd) which allows a bona fide purchaser to retain title to an article when the improvements and additions made in good faith exceed the value of the article to the extent that the nature of the article is changed and the article becomes merely accessory to the resulting product. *See* 1 Tex.Jur.3d *Accession* § 2 (1979). This rule cannot benefit Finley, however, because it is available only to a bona fide purchaser. The law will not permit one to take advantage of his own wrong. *Werner Stove Co. v. Pickering,* 119 S.W. 333, 334 (Tex.Civ.App.1909, no writ). *See also* 43 A.L.R.2d 814, 826 (1955).

■ Nor can Finley assert a repairman's possessory lien under art. 5503. Only work

on the automobile authorized by the owner will give rise to an artisan's lien. *Southwestern Investment Co. v. Gilbreath,* 380 S.W.2d 196 (Tex.Civ.App.–Amarillo 1964, no writ). One without title cannot be permitted to make repairs and accessions to a stolen vehicle and then demand payment for them upon recovery by the true owner. Finley and King were merely volunteers in adding to the value of a truck to which they had no title.

The judgment of the court of civil appeals is reversed, and judgment is rendered that Drake Insurance Company is the owner of the truck and is entitled to its possession. The cross–action of King against Finley is severed and remanded to the district court for further proceedings.