**TEXAS OIL COMPANY, Appellant,**

v.

**TENNECO INC., Tenneco Oil Company, Morgan Stanley & Co., Inc., Seagull Energy Corporation, and Seagull Minerals Corporation, Appellees.**

No. B14–92–00875–CV.

Court of Appeals of Texas, Houston (14th Dist.).

Dec. 22, 1994.

George Bishop of Houston, TX, Richard Courntiss of Houston, TX, for appellants.

Kevin Schuble of Houston, TX, Jeff Weems of Houston, TX, Harvey Grant of Houston, TX, Robin C. Gibbs of Houston, TX, Grant Cook of Houston, TX, Jess H. Hall, Jr., of Houston, TX, Christopher Reynolds of Houston, for appellees.

Before MURPHY, SEARS and DRAUGHN, JJ.

## OPINION ON MOTION
## FOR REHEARING

MURPHY, Justice.

This is a summary judgment case. Texas Oil Company appeals from an order granting appellees' motions for summary judgment, raising three points of error. In our original opinion of June 2, 1994, we affirmed the trial court's judgment as to the Tenneco and Seagull parties. As to Morgan Stanley, we reversed the judgment and remanded for trial only that part of the judgment regarding the claim of tortious interference with prospective contract. We affirmed the remainder of the judgment with respect to Morgan Stanley. We have overruled Texas Oil's motion for rehearing and withdrawn our original opinion. Before issuing this opinion on rehearing, Texas Oil filed a motion to dismiss the appeal as to the Tenneco parties. We

grant Texas Oil's motion and overrule their motion for rehearing against the Tenneco parties and dismiss the appeal against the Tenneco parties. With respect to the Seagull parties and Morgan Stanley, we affirm the trial court's judgment in part, and reverse and remand in part.

In 1988, Texas Oil learned that Tenneco was to sell one of its subsidiaries, Houston Oil & Minerals ("HO & M"), and that Morgan Stanley & Co., Inc. was handling this sale. Texas Oil extensively reviewed HO & M, and on October 5, 1988, Texas Oil representatives met with Morgan Stanley representatives and made on oral offer of $16.2 million for all HO & M stock. Morgan Stanley allegedly told Texas Oil it was the high bidder and asked for the offer in writing. Texas Oil further alleges that Morgan Stanley made the following representations: (1) that Texas Oil did not need to present a written contract until the next day; (2) if a higher offer was received, Texas Oil would be given an opportunity to raise its price; but, (3) that Texas Oil's offer was acceptable if Texas Oil was not advised of a higher bid by 9:00 a.m. on October 7.

On October 6, 1988, Texas Oil sent a written letter agreement to Morgan Stanley, which set forth the proposed purchase price, the effective date of sale, the proposed time of closing, and other areas that required future negotiation or agreement. Texas Oil contends that, after the 9:00 a.m. deadline on October 7 passed, they contacted Morgan Stanley, who informed them that theirs was the highest offer, that the offer was accepted, and that Tenneco would sign the letter agreement that day.

Tenneco and Morgan Stanley respond that Texas Oil's written agreement was merely a written proposal which they found unacceptable. Seagull had submitted a letter proposal on October 5, 1988 at an initial offering price of $16.1 million. After learning of Texas Oil's offer of $16.2 million, Morgan Stanley contacted Seagull on October 6, 1988 and encouraged it to raise its offering price and, on October 8, 1988, Seagull submitted a second written proposal with an offering price of $16.4 million. Tenneco accepted this offer and executed Seagull's letter proposal on Oc-

tober 8. On October 10, 1988 Morgan Stanley advised Texas Oil that Tenneco had accepted Seagull's higher offer. Texas Oil sent another letter proposal on October 12, 1988, raising its offering price to $17.2 million, but Tenneco did not accept this offer.

Texas Oil then filed suit against appellees, alleging breach of contract by Tenneco and Morgan Stanley, promissory estoppel, tortious interference with contract or with a prospective contract by Morgan Stanley and Seagull, fraud, negligence, and negligent misrepresentation by Morgan Stanley, civil conspiracy involving all appellees, violation of TEX.BUS. & COM.CODE ANN. § 27.01 (fraud in a real estate transaction) by Tenneco and Morgan Stanley, violation of 15 U.S.C. § 771 (violation of the Securities Act of 1933) by Tenneco and Morgan Stanley, and conversion by all appellees. Appellees filed motions for summary judgment which the trial court granted.

In two points of error, Texas Oil contends the trial court erred in granting summary judgment because material fact issues exist regarding: (1) tortious interference, fraud, and civil conspiracy by Morgan Stanley and Seagull, and (2) negligent misrepresentation by Morgan Stanley. When moving for summary judgment, a party must show there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Nixon v. Mr. Property Management Co.*, 690 S.W.2d 546, 548 (Tex.1985). On appeal, we must determine whether the movant met its burden. In doing so, we must take as true all proof favorable to the non-movant, indulging all reasonable inferences and resolving all doubts in the non-movant's favor. *Id.* at 548–49.

## TORTIOUS INTERFERENCE WITH CONTRACT AND WITH PROSPECTIVE CONTRACT

In points of error two and three, Texas Oil contends the trial court erred in granting summary judgment because there is proof of tortious interference with an existing contract and with prospective contract by Morgan Stanley and Seagull. In its motion for summary judgment, Morgan Stanley argued there was no tortious interference as a mat-

ter of law because there was no enforceable contract and, as a disclosed agent of Tenneco, Morgan Stanley was not an interfering third party. Seagull alleged there was no valid contract, no proximate cause, no intent to interfere, and that Seagull's actions were privileged. We will address the tortious interference with existing contract claims first.

 The elements of tortious interference with an existing contract are:

 (1) there was a contract subject to interference,

 (2) the act of interference was willful and intentional,

 (3) such intentional act was a proximate cause of plaintiff's damage, and

 (4) actual damage or loss occurred.

*Juliette Fowler Homes, Inc. v. Welch Assoc., Inc.,* 793 S.W.2d 660, 664 (Tex.1990). The first element requires the existence of a valid contract, but mere unenforceability is no defense to an action for tortious interference with its performance. *Id.* Thus, a contract that violates the statute of frauds may still be the subject of a tortious interference claim. *See id.; Clements v. Withers,* 437 S.W.2d 818, 821 (Tex.1969).

Morgan Stanley and Seagull assert that the alleged contract is not merely unenforceable, but is void because essential terms are lacking. In particular, they maintain that essential terms are missing or uncertain, making the contract nothing more than an agreement to agree.

 The rules regarding indefiniteness of material terms of a contract are based on the concept that a party cannot accept an offer so as to form a contract unless the terms of that contract are reasonably certain. RESTATEMENT (SECOND) OF CONTRACTS § 33(1) (1981). Thus, the actions of the parties may conclusively establish their intention to enter a binding agreement even if some terms are left for future agreement. *Id.* at Comment a. To that end, Texas courts prefer to validate transactions rather than void them. *Dahlberg v. Holden,* 150 Tex. 179, 238 S.W.2d 699, 701 (1951). A court may not create a contract where none exists and they generally may not interpolate or eliminate material terms. *Id.* However, parties may agree on some terms sufficient to create a contract, leaving other provisions for later negotiation. *See Scott v. Ingle Bros. Pacific, Inc.,* 489 S.W.2d 554, 555 (Tex.1972). In certain situations, a court may uphold an agreement by supplying missing terms, such as implying a reasonable price. *Bendalin v. Delgado,* 406 S.W.2d 897, 900 (Tex.1966).

The Restatement asserts that contract terms are reasonably certain "if they provide a basis for determining the existence of a breach and for giving an appropriate remedy." RESTATEMENT (SECOND) OF CONTRACTS § 33(2) (1981). This is in line with the policy that parties, and not the courts, should make contracts. Where the parties intended to make an agreement and there is a certain basis for granting a remedy, courts should find the contract terms definite enough to provide a remedy. *Id.* at Comment b. Uncertainty of terms, however, can preclude one remedy without affecting others. For example, less certainty is necessary in a suit for damages than one for specific performance. *See Kirkwood & Morgan, Inc. v. Roach,* 360 S.W.2d 173, 176 (Tex.Civ.App.—San Antonio 1962, writ ref'd n.r.e.). *But see Bendalin,* 406 S.W.2d at 900 (the supreme court held that lack of an express agreement on price was not fatal to maintenance of a suit for specific performance of an oral agreement to purchase stock).

Where essential terms are missing, courts often find no more than an agreement to agree. *See Pine v. Gibraltar Sav. Ass'n,* 519 S.W.2d 238, 244 (Tex.Civ.App.—Houston [1st Dist.] 1975, writ ref'd n.r.e.). Courts have, however, implied terms where the surrounding circumstances left little doubt as to the parties' intentions. *See Morgan v. Young,* 203 S.W.2d 837, 846 (Tex.Civ.App.—Beaumont 1947, writ ref'd n.r.e.).

 Here, the October 6, 1988 letter sets out with certainty the terms regarding price and quantity of described stock, but many other parts of the contract are left for future negotiation and agreement. These include:

 (1) whether Texas Oil was willing to agree to the terms of the draft stock-purchase agreement prepared by Tenneco;

(2) whether Texas Oil would agree to structure the transaction as an asset sale transaction as opposed to a stock sale transaction;

(3) whether the Ensearch litigation was included in the proposed purchase price of $16.2 million;

(4) whether Texas Oil would or could indemnify Tenneco for any liability it might have stemming from its past operation of HO & M;

(5) the source of Texas Oil's funds to purchase HO & M; and

(6) whether certain items of furniture, computer software and the like were to be included in the sale.

Those provisions requiring future negotiation indicate that the parties are agreeing to make a future contract and an agreement leaving material terms to be agreed upon later is not definite and specific as to material and essential terms and is, therefore, unenforceable. *See Parker Chiropractic Research Foundation v. Fairmont Dallas Hotel Co.*, 500 S.W.2d 196, 201 (Tex.Civ. App.—Dallas 1973, no writ). Where essential terms are missing, we may find no more than an agreement to agree. *See Pine v. Gibraltar Sav. Ass'n*, 519 S.W.2d 238, 244 (Tex.Civ.App.—Houston [1st Dist.] 1975, writ ref'd n.r.e.). Furthermore, a contract providing for an agreement to be negotiated in the future is void. *See, e.g., Texas State Optical v. Caylor*, 387 S.W.2d 461, 464 (Tex.Civ. App.—Beaumont 1965, writ ref'd n.r.e.). Therefore, we find the proposal is a void instrument and the trial court properly granted summary judgment on the tortious interference with existing contract claim in favor of Morgan Stanley and Seagull.

We turn next to Texas Oil's claim of tortious interference with prospective contract alleged against Morgan Stanley and Seagull. The elements of tortious interference with prospective contract are:

(1) a reasonable probability that the parties would have entered into a contractual relationship,

(2) an intentional and malicious act by the defendant that prevented the relationship from occurring,

(3) the defendant lacked privilege or justification to do the act, and

(4) actual harm or damage resulted from the defendant's interference.

*Exxon Corp. v. Allsup*, 808 S.W.2d 648, 659 (Tex.App.—Corpus Christi 1991, writ denied).

In its motion for summary judgment, Morgan Stanley claimed it was Tenneco's agent in the sale of HO & M and thus, that it was privileged to interfere in Tenneco's contractual relations. An agent generally cannot tortiously interfere with its principal's contract or prospective contract. *American Med. Int'l, Inc. v. Giurintano*, 821 S.W.2d 331, 335–36 (Tex.App.—Houston [14th Dist.] 1991, no writ). This is because liability must be founded upon the acts of an interfering third party. *Id.* at 335. Agents are generally not regarded as third parties because their legal identity is that of their principal. *Id.*[1] As summary judgment proof of this claim, Morgan Stanley submitted an affidavit by Tom Hassen, an employee of Morgan Stanley, involved in the HO & M sale who stated that Morgan Stanley acted at all times in the best interest of its principal, Tenneco. This proof was sufficient to support summary judgment in Morgan Stanley's favor and the burden then shifted to Texas Oil to raise fact issues precluding summary judgment. *City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678 (Tex.1979).

Texas Oil countered this argument by citing *Eloise Bauer & Assoc., Inc. v. Electronic Realty Assoc., Inc.*, 621 S.W.2d 200 (Tex.Civ.App.—Texarkana 1981, writ ref'd n.r.e.) for the proposition that an agent's tortious interference with its principal's contract is not privileged when the

---

1. Appellant Morgan Stanley also cites *Holloway v. Skinner*, 860 S.W.2d 217 (1994) in which the supreme court granted writ of error on the issue whether a president, director, and largest shareholder of a corporation could tortiously interfere with the corporation's contracts. Morgan Stanley apparently assumes that this action by the supreme court means the court would find that such an agent of the corporation could not tortiously interfere with its principal's contracts or would be legally privileged to do so. We do not rely upon anticipated holdings.

agent is acting, not to further the principal's business, but primarily to further its own interests, or out of malice. *See also Giurintano*, 821 S.W.2d at 336. The privilege is ordinarily limited to instances where the interferor acts in good faith and believes his actions are best for the corporation.[2] *Eloise Bauer*, 621 S.W.2d at 203.

As indications of Morgan Stanley's actions outside the scope of its agency, Texas Oil points to Morgan Stanley's misrepresentations that Texas Oil's offer had been accepted and that Texas Oil would be allowed to submit a competitive bid if a higher bid were received. Morgan Stanley claims that the alleged acts of interference are "based upon *gross misstatements* of the record." Brief of Appellee Morgan Stanley & Company, Incorporated at 29 (emphasis in original). In reviewing the record, we must consider the proof in a light most favorable to Texas Oil. Our examination of the record reveals sufficient summary judgment proof to raise fact questions precluding entry of summary judgment on the issues of whether Morgan Stanley committed tortious interference with prospective contractual relations.

▬▬▬ In its motion for summary judgment, Morgan Stanley also alleged that the tortious interference claims were barred by the two-year statute of limitations. A tortious interference claim is governed by the two year statute of limitations. *See First Nat'l Bank of Eagle Pass v. Levine*, 721 S.W.2d 287, 289 (Tex.1986). Morgan Stanley asserts that Texas Oil did not allege tortious interference claims against Morgan Stanley until the filing date of its First Amended Original Petition, on April 9, 1991. The alleged interference occurred in the Fall of 1988, more than two years before the filing date of the pleading raising these claims.

Texas Oil contends that no proof supports this defense because Morgan Stanley did not attach superseded petitions as summary judgment proof. Texas Oil also claims the trial court did not consider the early petitions in connection with the summary judgment because they are not mentioned in the trial court's list of proof considered. The trial court stated that it considered the pleadings in accordance with Rule 166a. The original petition and the first, second, and third amended original petitions were superseded by the fourth amended original petition and they no longer constituted pleadings in the case. *Drake Ins. Co. v. King*, 606 S.W.2d 812, 817 (Tex.1980). Once superseded, these petitions are no longer a judicial admission, but must be introduced like any other admissions before they may be considered as proof. *Id.* Morgan Stanley's motion for summary judgment alleging the defense of limitations was defective because it did not attach copies of the abandoned pleadings. *See MBank Brenham, N.A. v. Barrera*, 721 S.W.2d 840, 842 (Tex.1986).

Morgan Stanley's response is two-fold. First, it asserts that Texas Oil did not raise this argument in the trial court and is therefore precluded from raising it for the first time on appeal. Texas Oil's argument, however, simply points out defects in Morgan Stanley's summary judgment proof. The burden is on Morgan Stanley as movant to establish that there are no genuine issues of material fact and that Morgan Stanley is entitled to judgment as a matter of law. *Nixon*, 690 S.W.2d at 548. By not attaching sufficient summary judgment proof to its motion, Morgan Stanley failed to meet its burden and Texas Oil was not required to file a response acknowledging this failure. No response is necessary when the movant's summary judgment proof is legally insufficient. *Cove Inv., Inc. v. Manges*, 602 S.W.2d 512, 514 (Tex.1980).[3]

---

**2.** In its motion for rehearing, Morgan Stanley argues that Texas Oil judicially admitted Morgan Stanley's agency status and it cannot now take a contrary position. This argument has no merit. Texas Oil's assertion that Morgan Stanley acted as Tenneco's agent does not preclude a charge that Morgan Stanley acted outside the scope of its agency in its dealings with Texas Oil. *See American Medical Int'l, Inc. v. Giurintano*, 821 S.W.2d at 335–36; *Gonzalez v. Gutierrez*, 694

S.W.2d 384, 388 (Tex.App.—San Antonio 1985, no writ); *Eloise Bauer & Assoc., Inc. v. Electronic Realty Assoc., Inc.*, 621 S.W.2d at 203.

**3.** In its motion for rehearing, Morgan Stanley claims that our holding on this issue violates the rules pronounced by the supreme court in *City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671 (Tex.1979). In *Clear Creek*, the court held that a movant need not negate all possible issues

Morgan Stanley further argues that the precedential value of *MBank Brenham* is suspect because it predates amendments to Rule 166a. Rule 166a provides that judgment shall be rendered if "(i) the deposition transcripts, interrogatory answers, and other discovery responses referenced or set forth in the motion or response, and (ii) *the pleadings, admissions, affidavits, stipulations of the parties, and authenticated or certified public records, if any, on file at the time of the hearing* ... show that ... there is no genuine issue as to any material fact...." TEX.R.CIV.P. 166a(c) (emphasis added).

Morgan Stanley claims that the version of Rule 166a in effect at the time of the *MBank Brenham* opinion did not contain the underlined section quoted above. The 1986 version of this rule provided that judgment shall be rendered if "the pleadings, depositions, answers to interrogatories, admissions, affidavits, stipulations of the parties, and authenticated or certified public records, if any, on file at the time of the hearing ... show that ... there is no genuine issue as to any material fact...." TEX.R.CIV.P. 166–A (West 1986). Although the 1986 version included depositions transcripts and interrogatory answers in the list of items "if any, on file at the time of the hearing," the remaining language is identical to the language in effect today. Morgan Stanley's representation to the contrary is erroneous. Thus, there is no basis for Morgan Stanley's challenge to the precedential value of *MBank Brenham*.

In addition to arguing that Morgan Stanley failed to meet its summary judgment burden of proving the limitations defense, Texas Oil maintains that sufficient facts were alleged in the original petition to support application of the "relation back" doctrine and statute. TEX.CIV.PRAC. & REM.CODE ANN. § 16.068 (Vernon 1986) allows a plaintiff to amend a petition, filed before causes of action were barred by limitations, to assert other causes of action based upon the same trans-

action or occurrence. Although Morgan Stanley has supplemented the record to incorporate Texas Oil's original petition, supplemental petition, and first through third amended petitions, none of these superseded pleadings were before the trial court in the summary judgment proceeding and we may not consider any proof the trial court did not consider. *Gandara v. Novasad*, 752 S.W.2d 740, 743 (Tex.App.—Corpus Christi 1988, no writ). Thus, we are unable to determine whether the relation back doctrine applies.

Finally, Morgan Stanley argues on appeal that there was no issue of fact about the element of malice. Morgan Stanley's motion for summary judgment, however, does not contain this argument. Issues not expressly presented to the trial court in the motion will not be considered as grounds for reversal. TEX.R.CIV.P. 166a. We sustain point of error two to the extent it challenges the trial court's grant of summary judgment to Morgan Stanley on the claim of tortious interference with prospective contract.

■ We turn now to Texas Oil's claim of tortious interference with prospective contractual relations against Seagull. In its motion for summary judgment, Seagull argued that the tortious interference claim failed because: (1) there is no proof Seagull had knowledge of any prospective contract between Texas Oil and Tenneco; (2) there was no reasonable probability that Texas Oil would have entered into a contractual relationship with Tenneco after October 8, 1988; (3) there is no proof that Seagull's alleged actions were undertaken to harm Texas Oil; and (4) any alleged act by Seagull was legally justified.

The facts show that Seagull met with Morgan Stanley on October 5, 1988 and offered $16.16 million. Texas Oil allegedly met with Morgan Stanley later that same day and offered $16.2 million. According to Texas Oil, Morgan Stanley told Texas Oil that its offer was the highest, that it would be ac-

---

of law and fact that could be raised by the non-movant, but were not. *Id.* at 678–79. The general rule is that the non-movant must expressly present to the trial court those issues that would defeat the movant's right to summary judgment or waive the right to assign them as error on appeal. *Id.* at 679. A non-movant may for the

first time on appeal attack the legal sufficiency of the grounds raised by the movant. *See id.* at 678. In this case, Texas Oil's challenge is to the legal sufficiency of Morgan Stanley's summary judgment proof supporting its limitations claim. Therefore, our ruling does not violate the supreme court's mandate.

cepted, if put in written form, and that Texas Oil would be allowed to make another offer if a higher bid came in by October 7, 1988. Texas Oil submitted its written offer on October 6, 1988. Seagull was advised that they would be the successful bidder, if they would "sweeten [their] offer just a little bit...." Seagull then submitted another bid for $16.4 million. Joe Rye of Seagull testified that Seagull sent its increased bid to Tenneco by messenger on Friday, October 7, 1988. Although sent on October 7, 1988, this bid was dated October 5, 1988. Rye explained that, when they prepared the new bid, Seagull revised the original bid document, dated October 5, 1988, and failed to change the date. Seagull representatives denied any knowledge of other bidders or the amount of the other bids. Notes from a telephone conversation dated October 17, 1988, between Barry Galt, Chairman and CEO of Seagull, and Tom Hassen, of Morgan Stanley, contain a list of unsuccessful bidders, including Texas Oil. Regarding Texas Oil, Galt's notes state, "Apparently it is the $16.2 MM bidder." Texas Oil contends that referring to Texas Oil as "the" $16.2 million bidder indicates Seagull's prior knowledge of a $16.2 million bidder.

We agree with Seagull that no fact issues exist as to this claim. Although the facts recited above raise suspicion about whether Seagull knew, before making its second bid, that another bidder had offered $16.2 million, there are no facts raising a fact issue that Seagull knew, at the time it submitted its second bid, that the $16.2 million bidder was Texas Oil or that there was a reasonable probability that Texas Oil and Tenneco would enter into a contract. Absent these fact issues, Seagull's actions could not have been intentional. Intentional conduct means that " 'the actor desires to cause the consequences of his act, or that he believes that the consequences are substantially certain to result from it'." *Southwestern Bell Tel. Co. v. John Carlo Texas, Inc.*, 843 S.W.2d 470, 472 (Tex. 1992) (quoting RESTATEMENT (SECOND) OF TORTS § 8A (1965)). Absent any knowledge that Texas Oil was the $16.2 million dollar bidder and that there was a reasonable probability of a contract between Tenneco and Texas Oil, there are no fact issues whether

Seagull desired to interfere with the probable contractual relationship or that Seagull believed interference was substantially certain to result from its actions. Because we find no fact issue regarding the intent element of the cause of action for tortious interference with prospective contract, the trial court correctly granted summary judgment in favor of Seagull on this claim. To the extent it challenges the trial court's ruling on the claim that Seagull committed tortious interference, we overrule point of error three.

## FRAUDULENT AND NEGLIGENT MISREPRESENTATIONS

Texas Oil next alleges that the trial court erred in granting summary judgment on the causes of action of common law fraud against Morgan Stanley and Seagull. The elements of a cause of action for fraud are:

(1) that a material representation was made;

(2) that it was false;

(3) that the speaker knew it was false when made or that the speaker made it recklessly without any knowledge of the truth and as a positive assertion;

(4) that he made it with the intention that it be acted upon by the other party;

(5) that the party acted in reliance upon it; and

(6) damage.

*T.O. Stanley Boot Co., Inc. v. The Bank of El Paso*, 847 S.W.2d 218, 222 (Tex.1992). If the representation involves a promise to do an act in the future, the plaintiff must also prove that, at the time the defendant representative made the promise, the defendant had no intention of performing the act. *Id.*

In its motion for summary judgment, Morgan Stanley first argued that the fraud claims were improperly repackaged contract claims. Asserting that Texas Oil's fraud and negligent misrepresentation claims are grounded on the same set of allegations and seek the same damages as the contract claims, Morgan Stanley contends we should affirm the trial court's dismissal of these claims.

The acts of a party may breach duties in tort or contract or in both. *Jim Walter Homes, Inc. v. Reed,* 711 S.W.2d 617, 618 (Tex.1986). Generally, the nature of the injury determines the type of duty or duties breached. *Id.* When the injury alleged is only the economic loss arising from the contract, the action sounds solely in contract. *Id.* The measure of damages in a fraud case is the actual amount of the party's loss resulting directly and proximately from the fraud. *C & C Partners v. Sun Exploration & Prod. Co., Inc.,* 783 S.W.2d 707, 719 (Tex. App.—Dallas 1989, writ denied). Speculative losses and lost profits are not recoverable in an action for fraud. *Id.*

In its Fourth Amended Original Petition, Texas Oil sought contract damages of lost profits and lost opportunity of $13.8 billion. Regarding fraud, Texas Oil sought actual damages proximately caused by Morgan Stanley's misrepresentations in the amount of $13.8 billion. The summary judgment proof relating to damages included deposition excerpts from Skip Ward, President of Texas Oil, and Richard Pettigrew, Vice–President of Texas Oil. Richard Pettigrew testified as follows:

Q. Now, what did Texas Oil Company do, if anything, in reliance on those two agreements or statements made to them by Mr. Hassen?

A. Based on his statements we submitted the written offer.

Q. Okay. Did you do anything else in reliance on those statements?

A. Well, we had a little celebration.

Q. Anything else in reliance on those statements?

A. That's all I remember.

. . . .

Q. Texas Oil did not obligate itself to acquire any additional office space in reliance on the Tenneco agreement; did it?

A. No, sir.

Q. Texas Oil did not obligate itself to employ additional personnel in reliance on the Tenneco agreement; did it?

A. No, sir.

Q. Texas Oil did not obligate—did not purchase nor obligate itself to purchase any additional equipment or computer hardware, or office furniture or machines in reliance on the Tenneco agreement; did it?

A. Not to my knowledge.

Q. Okay. Texas Oil did not go out and borrow any money or obligate itself to pay money otherwise in reliance on the Tenneco agreement; did it?

A. Not to my knowledge.

James Ward offered the following testimony:

Q. Do you have any understanding of the claim that's being asserted by The Texas Oil Company in this lawsuit with respect to how it was damaged by reason of anything that my client, Tenneco, did or did not do?

A. Damaged?

Q. Yes, sir.

A. Well, yeah. Again, I have to be redundant. We were damaged, (A) Time and effort involved and resources to spend evaluating the acquisition. That was probably minor compared to the lost profits that we could have generated from the acquisition itself.

. . . .

A. We lost time, resources and money, direct out-of-pocket expenses, but the major loss was the lost profits and opportunity we had with the acquisition of HO & M.

This proof shows that the only damages Texas Oil sought, apart from lost profits or benefit of the bargain contract damages, were the costs involved in preparing the bid and the written offer. Such costs were incurred by all bidders and we agree with Morgan Stanley that these do not constitute damages proximately caused by any alleged fraud. The amount of damages mentioned in Texas Oil's petition, which is exactly the same sum of damages for both the contract claims and the misrepresentation claims, indicates that Texas Oil is seeking to recover contract damages. Because we find no indi-

cation of any damages that were proximately caused by fraud, the trial court correctly dismissed the fraudulent and negligent misrepresentation claims. We overrule points of error two and three to the extent they concern the claims of fraud and negligent misrepresentation.

## CONSPIRACY

■ Finally, the trial court granted summary judgment in favor of appellees on Texas Oil's claim of conspiracy. There is no independent liability for civil conspiracy. *Belz v. Belz*, 667 S.W.2d 240, 243 (Tex.App.— Dallas 1984, writ ref'd n.r.e.). Instead, Texas Oil must prove the existence of a wrongful action that the appellees conspired to commit. *See Massey v. Armco Steel Co.*, 652 S.W.2d 932, 934 (Tex.1983). Furthermore, there must be at least two wrongdoers. *Id.* On appeal, Texas Oil has challenged the trial court's ruling on the claim of a conspiracy between Morgan Stanley and Seagull. Because we have affirmed the trial court's dismissal of all causes of action against Seagull, there are no longer two potential wrongdoers. Thus, the trial court properly granted summary judgment on the conspiracy claim. We overrule points of error two and three to the extent they concern the claim of civil conspiracy on the part of Morgan Stanley and Seagull.

We reverse the judgment and remand for trial the claim of tortious interference with prospective contract against Morgan Stanley. We affirm the remainder of the judgment.

(J. Sears and Draughn occur in the result only.)