### ROBERT H. FLANIKIN, ADM'R, v. ABIGAIL FOKES.

A contract by a colonist with a Commissioner for the extension of titles, that in consideration that the Commissioner would clear out her headright league of land to which she was entitled in that Colony, pay all the expenses and obtain a grant or title to the same, she would convey to him one undivided half of her said headright league, was null and void.

Appeal from Milam. The petition alleged " that Abigail " Fokes, a resident of the said county of Milam, on the —— " day of ——, 1835, entered into a contract with said Steel, " wherein the said Abigail, in consideration that the said Steel " would clear out her headright league of land, to which she " was entitled as a colonist in the Nashville Colony, pay all " the Government dues and expenses, and obtain a grant or " title to the same, covenanted and agreed to convey to said " Steel, his heirs and administrators, a good and sufficient title

" to one equal and undivided half of her said headright league."
The other facts appear from the Opinion.

*J. D. & D. C. Giddings,* for appellant.

LIPSCOMB, J.   This suit was brought by the appellant, for
the specific performance of a bond, alleged to have been given
by the defendant to Steel, the intestate of plaintiff, to make
title to one-half of a league of land granted to the defendant,
in consideration of the fees and expenses of procuring the grant
being paid by Steel.   It was alleged that the bond was lost.
The only evidence that such bond was ever in existence, was
the acknowledgement of the defendant that she had given such
a bond, and was ready to make title when the bond was pre-
sented.   There were several matters of defence set up by the
defendant, only one of which will be examined.

It was alleged that Steel, to whom the bond was given, was
the Commissioner for extending titles to grantees in the Col-
ony, when the grant was issued, and within which Colony the
land granted was situated.   The grant to the defendant was
offered and read in evidence by the plaintiff, and it was issued
by Steel as Commissioner.   The plaintiff asked no charge from
the Court.   The defendant asked many.   Only three were
given, and we will not look beyond them, in determining
whether the verdict and judgment for the defendant were erro-
neous.   These charges are the 11th, 12th and 13th of those
asked by the defendant:

That a contract of this kind, made with William H. Steel,
Commissioner of Robertson's Colony, at the time he was Com-
missioner, would be null and void ; and if the jury believe from
the evidence, this contract was so made, they must find for the
defendant.

That a contract, so made with the Commissioner, would be
in contravention of public law and policy of the Government

and country; and if the jury believe from the evidence it was such a contract, they must find for the defendant.

That Robertson's Colony continued until the year 1835, when the plaintiff alleges the contract was made, and that Steel was at that time in the regular and legal discharge of his duties as Commissioner.

These charges all refer to the legal capacity of Steel, the Commissioner for extending titles, to make a contract for a portion of the land, before it was granted. That such a contract would make him a party in interest, at the time he decided on the qualifications of the applicant for land, as a colonist, cannot be doubted; and that in determining on the sufficiency of her qualifications, he acted as a judge, is equally clear. He was, then, adjudicating his own case to the extent of the interest he had secured by his contract with the grantee. If there was no rule of law, forbidding such contracts from being made by a Commissioner, the great advantage his position as a Commissioner would give to the application in which he was so interested, would require that such contract should be regarded as very suspicious; so much so that it would, upon the ground of policy, be considered as not binding and obligatory. But such contracts are not condemned as invalid, upon the score of policy alone; they are also forbidden by well established rules of law. The Commissioner was an agent for his Government, to sell the land, or otherwise to dispose of it to such persons as possessed the necessary qualifications; and as agent, it was his province to decide on those qualifications; and he could not alienate to himself as a Colonist, nor could he do so by indirectly conveying title to land, of which, by contract with the grantee, he was to receive a part.

An agent to sell cannot become the purchaser from himself. (Story on Agency, Sec. 211.) And this principle is believed to pervade both the Civil and Common Law jurisprudence. In the case of De Leon v. White, (11. Tex. R.,) we decided that De Leon, as Commissioner, could not grant title to his

son, a minor, because it would be analagous to deciding his own case, which he could not do, in the opinion of Lord Coke, even if an Act of Parliament authorized him to do so. (Stroud's case, 16 and 17 Elizabeth.)   A contract which would give him an interest in an official act to be done by him, would be repugnant to law and sound morality ; and no Court would decree its specific execution.   Had Steel refused to perform the consideration, his refusal would not have afforded a ground of action against him, because the contract was unlawful ; nor can his intestate enforce the performance, for the same reason. The principles decided in the case cited from 11 Tex. R. are conclusive against the validity of the obligation, sought to be enforced in this suit.   The judgment of the Court below is therefore affirmed.

Judgment affirmed.