**L. M. CHEMELL, Arkansas Broiler Hatchery, Inc., and Chemell's Texas Broiler Hatchery, Inc., Appellants,**

v.

**PAYMASTER FEED MILLS DIVISION OF ANDERSON, CLAYTON & CO., Inc., Appellee.**

**No. 7265.**

Court of Civil Appeals of Texas.

Texarkana.

Dec. 6, 1960.

Rehearing Denied Dec. 27, 1960.

LeRoy La Salle, Carthage, for appellants.

Bradbury, Tippen & Brown, Abilene, for appellee.

CHADICK, Chief Justice.

This is a conversion of mortgaged property suit. The judgment of the trial court awarding damages is affirmed.

Paymaster Feed Mills Division of Anderson, Clayton and Company, Inc., hereinafter called "Paymaster", was plaintiff in the trial court and is appellee in this appeal. L. M. Chemell, Arkansas Broiler Hatchery, Inc., and Chemell's Texas Broiler Hatchery, Inc., hereinafter collectively referred to as "Chemell", were defendants in the trial court and are appellants here.

In June, 1957, M. C. Deal of Alvarado, Johnson County, Texas, contracted to sell Chemell his entire production of high quality hatching eggs, in accordance with the terms set out in a written agreement.

The following July Deal entered into a contract called a "Poultry Finance Agreement" with Paymaster, and apparently as a part of the same transaction executed and delivered to Paymaster a chattel mortgage. The mortgage instrument recited it was made for the purpose of securing indebtedness then owed, or thereafter to be owed, by Deal to Paymaster on account of ad-

vances made or thereafter to be made for the purchase of poultry, feed, or other purposes. The mortgage covered all of the poultry, together with the offspring, egg production therefrom, and additions thereto, then owed by Deal, or thereafter acquired, the birds included to number approximately 4,800, and located, or to be located when acquired, on a certain described tract of land. The instrument expressly stated Deal's intention to mortgage all

"poultry then owned or thereafter acquired by him and located or to be located when acquired on the described premises."

Deal specially agreed in the mortgage instrument to purchase from Paymaster his requirements of Paymaster feed at market or contract price in effect on the date of requested delivery, and agreed to request delivery by June 30, 1958, of all feed to be purchased under the terms of the mortgage.

By arrangements between all parties involved checks issued by Chemell to Deal for payment of eggs delivered were made payable to both Deal and Paymaster.

Paymaster sued Chemell for $1,692, alleging such amount was wrongfully deducted by Chemell from the purchase price of Deal's eggs previously mortgaged to Paymaster to pay a debt owed by Deal to Chemell. Chemell filed a general denial. A jury was waived, and trial was to the court. After hearing, judgment was rendered awarding Paymaster $1,692. The trial judge filed findings of fact and conclusions of law.

Chemell contends the mortgage given by Deal to Paymaster is invalid as to him because the egg production from Deal's chickens, the property said to have been converted, can not be identified from the mortgage's description of future egg production with the certainty necessary to affix a valid chattel mortgage lien upon such production when it came into being. Chemell in his brief agrees that under the law

Deal might mortgage property to be acquired in the future, provided the mortgage describes it with such certainty that it may be identified and its future acquisition is within the contemplation of the parties at the time the mortgage agreement is made. However, his objection as argued runs to want of identification of the eggs when produced, not to their failure to materialize. It is insisted that the mortgage, the material parts of which have been stated, is deficient in supplying a description by which future produced eggs may be identified, in that the period of time in which the production must occur is not set out. Absence of a time limitation in the instrument, it is urged, makes identity uncertain.

The production of eggs from a flock of chickens is logically analogous to the production of crops from land. A description of the crop to be planted and cultivated in the future, a description of the land to be planted, and the statement of the year the crop is to be grown meets the requirement of certainty of identity of a crop to be produced in the future in crop chattel mortgages. See Chattel Mortgages, 9 Tex. Juris., p. 121, Sec. 35. The mortgage here under review meets the test.

From the material parts of the mortgage heretofore stated it may be seen that the instrument was intended to cover present and future egg production from poultry on hand at the date of the instrument and to be acquired thereafter. The instrument mentioned advances for the purchase of poultry and poultry feed, but thereafter is concerned chiefly with the obligation of the parties in the purchase, payment and security of payment of the purchase price of feed, and requires Deal to request delivery of all feed to be used in his operation on or before June 30, 1958. The indebtedness claimed to be secured by a lien on egg production is for feed purchased during the term of the mortgage. The special agreement that Deal would request delivery of all feed on or before the 30th day of June, 1958, when construed with the other provi-

sions of the chattel mortgage sufficiently fixes the period of time egg production was to be subject to the terms of the mortgage. Such requirement effectively terminates the obligation of Paymaster to sell feed, and of Deal to buy it subject to the terms of the mortgage, and thereby fixes a time limit upon egg production mortgaged to secure the payment of the purchase price of the feed bought subject to the mortgage's provisions.

■ A schedule of egg sales by Deal to Chemell itemized to show the date the check was received by Deal from Chemell, and amounts in dollars and cents of the value of eggs delivered, deductions for Deal's indebtedness to Chemell, etc., was introduced in evidence by agreement of the parties. It carried a stipulation that the item "value" of eggs was the value under the contract between Deal and Chemell, and not the cash market value of the eggs at the time of delivery. Paymaster requested admission from Chemell under Rule 169, Texas Rules of Civil Procedure, respecting the issuance of checks by Chemell paying Deal for eggs received during various periods of time, together with a voucher showing the value of the eggs to be the face amount of the check concerned. These checks and values are in the aggregate the same as shown by the schedule. The record does not show a reply to the request unless the schedule mentioned be such. It makes little difference whether the request is taken as admitted under the rule or the schedule be looked to alone, so far as it affects the question under consideration. The question before this court is the absence or insufficiency of the evidence in the record to sustain the court's findings of value of the eggs converted by Chemell. Thus the probative value of the evidence is to be weighed. No point of error is urged respecting the erroneous admission of evidence or the failure of the trial court to apply a proper measure of damages.

In 89 C.J.S. Trover and Conversion, § 121, page 612, it is stated, "In the absence of other evidence, property converted by wrongful sale will be presumed to be worth the price received for it." The rule seems to have been adhered to in Texas and applied in Swift Gin Co., v. Robinson, Tex. Civ.App., 77 S.W.2d 333, application dismissed. The evidence of sale price of the eggs has probative value sufficient to support the court's finding and the judgment entered.

Several other serious questions have been ably briefed, but in the main, they require a finding by this court of the absence or insufficiency of evidence to support some court finding before the legal proposition tendered can be reached. The facts as developed in the trial are far more complex and involved than here stated. Statement has been limited to those facts thought to have a bearing upon questions discussed, and other facts necessary to give a more objective view of the parties, and their transactions are omitted in the interest of brevity. The evidence is thought to sufficiently support the court findings of fact, and an extension of this opinion by further statement is not warranted. Reversible error is not shown, and appellant's points of error are respectfully overruled.

The judgment of the trial court is affirmed.