**Fernando Perez ANAYA, Appellant,**

v.

**Emilio JACAMAN, Appellee.**

**No. 15263.**

Court of Civil Appeals of Texas,
San Antonio.

Feb. 20, 1974.

J. G. Hornberger, Laredo, for appellant.

Hall & Zaffirini, Laredo, for appellee.

BARROW, Chief Justice.

Appellant, a citizen of Mexico, brought this suit for conversion of his 1969 Mercedes Benz automobile against appellee, Emilio Jacaman, d/b/a Jaga Motor Company in Laredo, Texas, Oswaldo Presbitero Cruz and Overseas Orders, Inc. Presbitero is a Mexican citizen who was incarcerated in Mexico under a 15-year prison sentence prior to the trial, and was never served or appeared. Overseas Orders, Inc., is a Texas corporation with its principal place of business in Fort Worth, and its plea of privilege was sustained prior to this trial. See Overseas Orders, Inc. v. Anaya, 470 S.W.2d 72 (Tex.Civ. App.—San Antonio 1971, no writ). Therefore, the case proceeded to trial with Jacaman as the sole defendant, and a take-nothing judgment was entered after a non-jury trial.

Findings of fact and conclusions of law were filed herein.[1] Appellant asserts thirty-four assignments of error wherein he urges that there is no evidence or insufficient evidence to support each of the findings of fact and conclusions of law filed by the trial court.

The trial court found that the transaction in question arose from, or as a result of, appellant's attempt to defraud the Mexican government of custom duties on said vehicle. This practice, as well as the procedure used to accomplish such purpose, was apparently fairly common and was known to all the parties involved herein. In November, 1968, appellant and Jose Gomez Laguna went from their home in Mexico City to Houston and purchased the new Mercedes Benz in question for approximately $8,000. All the consideration was paid by appellant, but the Manufacturer's Certificate of Title[2] to said car was placed in Laguna's name. Laguna applied for and was issued a Texas Certificate of Title[3] on this vehicle, as well as 1968 Texas license plates. This was done because Laguna allegedly had friends in customs and would be able to take the car into Mexico with a tourist permit. Laguna, although a Mexican citizen, gave a fictitious Laredo, Texas, address on these papers. The car remained in the possession of appellant at all times thereafter until it was turned over to Presbitero in January, 1970. A tourist permit is supposed to be renewed each six months by a return of the vehicle to the United States. This was not done on this vehicle, although in July of 1969, appellant and Laguna flew to Laredo, and Laguna purchased 1969 license plates, again in Laguna's name.

It is obviously inconvenient to keep a car in Mexico City under a six-month tourist permit, but it is very hard to register such

1. The findings of fact were substantially as follows:
   1. That the transaction in question arose from or as a result of appellant's attempt to defraud the Mexican government in the payment of custom duties.
   2. That appellant, after an unsuccessful attempt to register the vehicle in Mexico turned it over to Presbitero.
   3. That appellant authorized Presbitero to sell the vehicle in the United States.
   4. There is insufficient credible evidence that appellant did not authorize Presbitero to sell said automobile.
   5. There is insufficient credible evidence that Laguna, the party in whose name the Texas Certificate of Title to the automobile appeared, did not authorize the sale of the automobile by Presbitero.
   6. There is insufficient credible evidence that Laguna did not actually sign the power of attorney authorizing the transfer of the certificate of title to said automobile.
   7. There is insufficient credible evidence that appellant or Laguna did not receive the proceeds of the purchase by Jacaman.
   8. There is insufficient credible evidence of the value of the automobile in Laredo on January 24, 1970, to afford the court a basis for a finding of its value.
   Conclusions of Law:
   1. That appellant's loss, if any, resulted from his own criminal conduct and the court should not expend the powers of the Texas courts to assist one in his position.
   2. There was insufficient credible evidence to prove that a conversion occurred.
   3. There was insufficient credible evidence to establish the amount of any loss or damage to appellant.

2. Article 6687–1, Section 22, Vernon's Tex. Rev.Civ.Stat.Ann.

3. Article 6687–1, Section 24, Vernon's Tex. Rev.Civ.Stat.Ann.

a car under Mexican law; and appellant believed the assistance of an "influential person" was required. Presbitero was represented to be such a person; and in January, 1970, appellant turned the car over to him, together with the title papers and 30,000 pesos. Presbitero was supposed to register the car in Mexico and would need a few days to do so. When the car was not returned to appellant after about fifteen days, he went to the police, and Presbitero was subsequently arrested and sentenced to prison. He advised appellant that he had sold the car in Laredo, and shortly thereafter appellant and Laguna went to the Webb County District Attorney's office in an effort to recover the car. Jacaman met appellant and Laguna at said office. Jacaman admitted at the trial that this was a different "Laguna" than the one who had signed a power of attorney before him, whereby Jacaman subsequently transferred the Texas title to Overseas Orders, Inc.

Jacaman testified that on Saturday morning, January 24, 1970, he was telephoned at home by his employee, Jose Mante, and advised that two men were at Jacaman's used car lot with a 1969 Mercedes Benz automobile for sale. Jacaman went to the lot and made an offer of $3,200 for said car. He was advised by Presbitero that this price was inadequate and further that Presbitero was trying to sell the car to other dealers, so the deal was not then closed. Nevertheless, the man with Presbitero, who was identified as "Laguna," signed a blank power of attorney before Jacaman, since "Laguna" would not return in the event Jacaman's bid should be accepted. Presbitero later returned alone, and the deal was closed. Jacaman compared Laguna's signature on the power of attorney with that on the title, and the signatures appeared to be the same. Mante's name was filled in as "attorney" on the blank power of attorney, which had been signed before Jacaman, as notary public; and in this capacity, Mante transferred the car to Jacaman on behalf of "Laguna." The following day, Jacaman took the car

to Fort Worth and sold it to Overseas Orders, Inc.

■ Findings of the trial court, although contradictory in part, would support the take-nothing judgment on several different theories. It was found that appellant authorized Presbitero to sell said vehicle. There is absolutely no evidence to support such finding, and this theory may be quickly disregarded. Likewise, there is no evidence that appellant received any of the proceeds of the check that Jacaman made payable to and delivered to Presbitero.

■ A more difficult question is presented regarding the court's finding that the man who signed the power of attorney before Jacaman was the same "Laguna" who held title under the Texas Certificate of Title. It is undisputed that this was a different man than the person brought by appellant to the Webb County District Attorney's office and to the trial and who represented on both occasions that he was the "Laguna" named in the title. No identification was shown Jacaman at the time the power of attorney was signed, and his sole basis for identification of that person is the similarity of signatures on the power of attorney and the Certificate of Title. No documentary proof was offered at the trial as to the identification of the witness, Laguna, with the Certificate of Title. Assuming that the similarity of the signatures, as shown Jacaman, is some evidence that the power of attorney was signed by the same person named in the Certificate of Title, it is our opinion from the record as a whole, that the finding by the trial court is so against the great weight and preponderance of the evidence as to be manifestly unjust.

■ The uniformly established rule is that a forged Certificate of Title will not pass title to an automobile, even where the owner has placed one in possession of the vehicle. McKinney v. Croan, 144 Tex. 9, 188 S.W.2d 144 (1945); Yousey v. Bogle, 457 S.W.2d 595 (Tex.Civ.App.—Waco 1970, writ ref'd n. r. e.); Beauchamp v.

Nichols, 278 S.W.2d 535 (Tex.Civ.App.—Amarillo 1954, no writ); Dublin National Bank v. Chastain, 167 S.W.2d 795 (Tex.Civ.App.—Eastland 1943, writ ref'd). Therefore, Jacaman did not acquire title to the vehicle if the power of attorney was not executed by the same person named in the Certificate of Title.

 It is also urged that appellant should not be permitted to recover because the entire transaction is tainted with his illegal actions in trying to avoid payment of custom duties on the vehicle. The universal rule, which has been consistently followed in Texas, is that court will not aid either party to an illegal agreement, whether executory or executed, but will leave the parties where it finds them. Patrizi v. McAnnich, 153 Tex. 389, 269 S.W.2d 343 (1954); Cox Feedlots, Inc. v. Hope, 498 S.W.2d 436, 438 (Tex.Civ.App.—San Antonio 1973, writ ref'd n. r. e.). This rule has no application here in that this suit is not based on an illegal agreement. Furthermore any illegal action taken by appellant was directed against the Mexican government, and not against Jacaman.

Appellee urges that in any event, appellant failed to prove any damages in that there is no proof as to the value of the car at the time of the alleged conversion. A party who establishes his cause of action for conversion is entitled to recover the value of the converted property at the time of the wrongful taking, together with interest from that date. Commercial Credit Corp. v. Flores, 345 S.W.2d 432 (Tex.Civ.App.—Eastland 1961, writ ref'd n. r. e.); 14 Tex.Jur.2d, Conversion, Sections 24 and 26. Appellant made no attempt to prove the market value of the car at such time. Nevertheless, there is evidence from Jacaman that the car was worth $3,200 at such time in that he willingly paid this amount for the car. In Chemell v. Paymaster Feed Mills, 341 S.W.2d 688, 690 (Tex.Civ.App.—Texarkana 1960, writ ref'd n. r. e.), the following rule from 89 C.J.S. Trover & Conversion § 121, p. 612, is quoted with approval: "'In the absence of other evidence, property converted by wrongful sale will be presumed to be worth the price received for it.'" It was thus held that the evidence of the sale price of the converted eggs was of probative force sufficient to support the trial court's judgment in that amount.

Here the trial court did not make a finding of damages, and we cannot say that, as a matter of law, the vehicle was worth the amount paid for it by Jacaman. Nevertheless, it clearly was worth something, and there is some evidence it was worth as much as $3,200. Therefore, there is insufficient evidence to support the trial court's conclusion that it was not worth any amount.

The judgment of the trial court is reversed and the cause remanded for a new trial.