B.J. KIRBY, Robert E. Hogan, Taylor B. Almon, Charles R. Hoover, Phil Clemente and Ben Sierad, Appellants,

v.

B.W. CRUCE, Jr., David C. Cole, Mesquite Investment Corporation and Hexter-Fair Title Company, Appellees.

No. 05–82–01211–CV.

Court of Appeals of Texas, Dallas.

Feb. 13, 1985.

Rehearing Denied March 30, 1985.

Kevin Cook, Arthur Blanchard, Dallas, for appellants.

Whitley Sessions, Stephen Maris, Bill Boyd, B.W. Cruce, Jr., Charles Michael Gray, Dallas, for appellees.

Before CARVER, GUILLOT and STEWART[1], JJ.

GUILLOT, Justice.

We withdraw our previous opinion, grant appellants' motion for rehearing, affirm the judgment of the trial court in part, reverse the judgment of the trial court in part, and render judgment in favor of appellants against appellees B.W. Cruce, Jr. and Mesquite Investment Corporation.

Appellants, plaintiffs below, brought suit charging B.W. Cruce, Jr., David C. Cole (who was dismissed on appeal), Melvin G. Price, and Hexter-Fair Title Company with civil conspiracy, misrepresentation, and breach of fiduciary duties. The trial was to a jury which found that B.W. Cruce, Jr. and Melvin G. Price formed a conspiracy to defraud appellants and other members of the Hickcox-Castle joint venture and that both David C. Cole and Mesquite Investment Corporation (MIC), knowing the intent and purpose of the conspiracy, willingly participated in it. The jury also found that B.W. Cruce, Jr. and David C. Cole breached their fiduciary duty to plaintiffs as joint venturers and that B.W. Cruce, Jr. breached his fiduciary duty to plaintiffs as trustee of the Hickcox-Castle joint venture.

The trial court entered a take nothing judgment in favor of Hexter-Fair Title Company against plaintiffs based on the jury's verdict and a take nothing judgment for Cruce, Cole, and MIC against plaintiffs notwithstanding the verdict. Appellee Cole has been dismissed and appellee MIC failed to file a brief. Melvin G. Price is not a party to the appeal.

In their first point of error, appellants contend that the trial court erred in entering a judgment notwithstanding the verdict because there is sufficient evidence that Cruce and Price formed a conspiracy to defraud plaintiffs and that both Cole and

---

1. Justice Stewart participated in this opinion, although she resigned from the court before the opinion was issued. Issuance date, after her resignation, is due to the inter-court circulation requirements of this court's local rules.

MIC, knowing the intent and purpose of the conspiracy, willingly participated in it.

It is well established in Texas that persons who agree with one another to defraud may be held jointly and severally liable as conspirators for the resulting damage. *Schlumberger Well Surveying Corp. v. Nortex Oil and Gas Corp.*, 435 S.W.2d 854, 857 (Tex.1968). "The agreement need not be formal, the understanding may be a tacit one and it is not essential that each conspirator have knowledge of the details of the conspiracy." *Bourland v. State*, 528 S.W.2d 350, 354 (Tex.Civ.App.—Austin 1975, writ ref'd n.r. e.). Furthermore, because civil conspiracies to defraud are conceived in secrecy and executed in such a manner as to avoid detection and exposure, a civil conspiracy need not be shown by direct evidence and is ordinarily established by circumstantial evidence. *International Bankers Life Ins. Co. v. Holloway*, 368 S.W.2d 567, 581–82 (Tex.1963).

Cruce testified that he met with Price in the latter part of May, 1972 and agreed to help Price form a joint venture to acquire land in eastern Dallas County near the location of a highway not yet known to the public. Together they schemed to secretly profit from the potential investors that Price assembled to finance the cost of acquiring the venture properties.

To obtain the secret profit, Cruce and Price represented to the investors that the venture properties cost more than they did. Cruce and Cole also created additional subordinate liens on the properties. For their efforts, Price obtained a cost-free ten percent interest in the joint venture, approximately $110,000.00 of subordinate lien notes, a $10,000.00 finder's fee, and $23,-000.00 in cash from Cruce and Cole. Cruce and Cole split a twenty-four percent interest in the joint venture and purchased $110,000.00 worth of subordinate lien notes for approximately $24,000.00 which was paid to Price.

The June 29, 1972, letter from Price to Cruce confirms that Cruce was to prepare a joint venture agreement whereby seventy-five percent of the participation by others was to cover *all* the cash required to close the venture properties and still leave a $10,000.00 "finder's fee" to be paid to Price. The letter establishes that Cruce and Price had no intention of paying their pro rata shares of the cost required to close the purchase of the venture properties.

The evidence further discloses that Cruce prepared false purchaser closing statements containing false purchase prices, increased cash disbursements, and additional subordinate liens for each and every one of the venture properties. Cruce and Cole distributed these false statements to plaintiffs in an effort to induce them to sign the joint venture.

When Cruce and Cole failed to pay their pro rata share of the expenses, the Mesquite Bank filed a lawsuit against the joint venture. During the trial, Cruce admitted helping Price make the various false misrepresentations. Cruce attempted to justify his conduct on the basis that he was acting as Price's attorney and trustee and therefore could not disclose the scheme. In Texas, the law is clear that an attorney may be held liable as a coconspirator if the "evidence supports a reasonable inference that [the attorney] had actual knowledge that the practice of [his clients] had a capacity to deceive, and that those practices were done for the purpose of acquiring property or money of others, and that [the attorney] intended to participate therein and to share in the gains so desired." *Bourland*, 528 S.W.2d at 355 (bracketed words substituted).

Although Cruce contends he was acting solely at Price's direction and was ignorant of any conspiracy to defraud, there is no evidence that Price paid Cruce even $1.00 for "legal services" rendered. Moreover, the evidence is clear that Cruce had knowledge that both his and Price's representation had a capacity to deceive the plaintiffs, that those practices were done for the purpose of acquiring money from the plaintiffs to obtain a secret profit

in the joint venture, and that Cruce intended to participate in these secret profits.

■ After hearing and seeing all of the evidence, the jury did not accept Cole's claim that he never heard anything about this scheme until after the lawsuit was filed. Although Cole had previously signed the joint venture agreement and represented that he had acquired a five percent interest in the Hickcox-Castle joint venture, Cole and Cruce paid nothing to accomplish the closings of the venture properties. All of their contributions were directed to Price. If there is any doubt as to Cole's knowledge of and participation in the conspiracy, it should be extinguished by the Speed Memo from Cruce to "Gator" Cole dated January 29, 1973 which states:

Gator-we own 23% of the Hickcox-Castle Joint Venture. Cost of the purchase was $24,192.91. $10,000.00 borrowed from Boyce-Cruce.
Pretty good.

■ MIC's knowledge and participation in the conspiracy by and through its president and secretary-treasurer, Cruce and Cole, respectively, is also supported by the evidence. MIC received the interest payments on four of the subordinate lien notes and forwarded them to Cruce-Cole Enterprises. Cruce and Cole owned over fifty percent of the shares of MIC. It is well established that a corporation may be held liable for the fraudulent acts of its officers and directors. *Peerless Fire Ins. Co. v. Reveire,* 188 S.W. 254, 256 (Tex.Civ. App.—Austin 1916, writ dism'd).

Accordingly, there is evidence to support the jury's findings that Cruce and Price formed a conspiracy to defraud the plaintiffs. There is also evidence that Cole and MIC, knowing the intent and purpose of the conspiracy, willingly participated in it. We sustain appellants' first point of error.

In points of error 2, 3, 4, 5, 8, 9, 10, and 11, appellants contend that the trial court erred in entering a judgment notwithstanding the verdict because there is sufficient evidence that (as trustee of the Hickcox-Castle joint venture) Cruce breached his fiduciary duty to plaintiffs as joint venturers.

■ As a joint venturer, Cruce owed plaintiffs a fiduciary duty of "utmost good faith and scrupulous honesty" and had a corresponding obligation to "make good faith disclosures of all facts relevant to the transaction." *Warner v. Winn,* 145 Tex. 302, 197 S.W.2d 338 (1946); *Griffin v. Reilly,* 275 S.W. 242 (Tex.Civ.App.—Amarillo 1925, no writ); *Russell v. Truitt,* 554 S.W.2d 948 (Tex.Civ.App.—Fort Worth 1977, writ ref'd n.r.e.). Moreover, as managing partner of the Hickcox-Castle joint venture, Cruce owed his co-partners one of the highest fiduciary duties recognized in the law.

Cruce did not fulfill his fiduciary obligations either as a joint venturer or as the manager/trustee of the joint venture. (Cruce disbursed $19,300.00 of the funds placed on deposit in the Hexter-Fair escrow account to Price knowing that Price had not contributed his pro rata share of the cash required to close the venture properties.) Cruce, Cole, and Price claimed that Price's net contribution to the joint venture was thirty-four percent. The cost of one percent interest in the joint venture as prepared by Cruce was approximately $3,800.00. Therefore, the pro rata contribution required to acquire a thirty-four percent interest in the joint venture would have been approximately $129,200.00. Price's contribution to the joint venture came to a total of $14,360.54.

The evidence also established that the actual total purchase price of the venture properties was at least $300,000.00 less than the total purchase price represented to appellants in the false closing statements and in the individual recaps, both of which were distributed to the appellants at the December 1972 meeting of the joint venturers. It is uncontroverted that, during the course of the trial, Cruce admitted that he never disclosed these facts to the appellants.

■ It is well established in Texas that the mere failure of Cruce to disclose to

appellants all aspects of their inducement in the transaction is in itself a breach of his fiduciary duty to appellants as joint venturers. *Kinzbach Tool Co., Inc. v. Corbett-Wallace Corp.*, 138 Tex. 565, 160 S.W.2d 509, 513–14 (1942). The jury finding that Cruce breached his fiduciary duty to plaintiffs is supported by sufficient evidence. We sustain points of error 2, 3, 4, 5, 8, 9, 10, and 11.

In points of error 6 and 7, appellants contend that the trial court erred in entering a judgment notwithstanding the verdict because there is sufficient evidence that Cruce and Price made false representations to appellants. The evidence is undisputed that Cruce signed, and Price distributed, copies of the Agreements to Participate to appellants. These written representations were repeated orally to all of the appellants by Price. Subsequently, the plaintiffs paid Cruce the sums represented by this agreement to be the cost of closing their pro rata shares of the venture properties. Due to the fiduciary relation between Cruce and the appellants, the appellants were under no obligation to inquire as to the truth of these representations. *Courseview, Inc. v. Phillips Petroleum Co.*, 158 Tex. 397, 312 S.W.2d 197 (1957).

The joint venture agreement, presented to the plaintiffs for their approval, reiterated the following representation:

> Initial contributions. The joint venturers acknowledge that each joint venturer has contributed to the joint venture the sums set opposite the name of each joint venturer on exhibit "A."

Cruce and Price never paid their pro rata shares of the costs required to close the venture properties. Moreover, it is clear from the letter of June 29, 1972, that Cruce and Price intended for those holding seventy-five percent interest in the joint venture to pay one-hundred percent of the costs of closing the venture properties.

The evidence supports the contention that Cruce made false and misleading written representations which appellants relied upon to their detriment. Because Cruce and Price were acting conspiratorially, the jury's findings that they perpetrated a fraud upon the appellants are supported by the evidence and we sustain appellants' points of error 6 and 7.

In points of error 12, 13, 14, and 15, appellants contend the trial court erred in entering a judgment notwithstanding the verdict because there is sufficient evidence to support the jury's findings of damages. The jury found that each plaintiff suffered the following amounts of damages as a result of the breach by Cruce and Cole of their fiduciary duty owed to appellants as joint venturers:

| | |
|---|---|
| Kirby | $174,000.00 |
| Hogan | 91,000.00 |
| Almon | 66,000.00 |
| Hoover | 66,000.00 |
| Clemente | 41,000.00 |
| Sierad | 41,000.00 |

The jury also found that these damages resulted from appellants' reliance upon the appellees' fraudulent representation. Consequently, appellants are entitled to restitution for the full amount of their contributions. *Watson v. Limited Partners of WCKT, LTD*, 570 S.W.2d 179, 182 (Tex.Civ. App.—Austin 1978, writ ref'd n.r.e.). Furthermore, Cole and MIC (as co-conspirators and participants with Cruce in the breach of his fiduciary duty to plaintiffs) are jointly and severally liable for these contributions, even though Cruce and Hexter-Fair were the only defendants who actually received plaintiffs' contributions. *Kinzbach*, 160 S.W.2d at 514.

> It is the settled law of this state that where a third party knowingly participates in the breach of a fiduciary, such third party becomes a joint tortfeasor with the fiduciary and is liable as such.

*Kinzbach*, 160 S.W.2d at 514.

The evidence is clear that Cruce, Cole, and Price used appellants' money to gain a thirty-four percent cost-free interest in the joint venture and took over $210,000.00 in cash by creating notes secured by subordinate liens on each of the venture properties. Consequently, the jury's finding of exemplary damages is supported by

the evidence and we find it not to be excessive in relation to the actual damages.

■ Exemplary damages may be assessed against parties who have breached their duties as fiduciaries by attempting to obtain a secret profit for themselves. *Holloway*, 368 S.W.2d at 583–84. As the court stated in *Russell*, which involved somewhat similar facts, "The issue is not whether defendants intended to injure the joint venturers but whether they intended to gain an additional benefit for themselves." *Russell*, 554 S.W.2d at 955.

The jury's findings that Cruce, Cole, and Price entered into an agreement to defraud the appellants to obtain a secret profit and that Cruce's and Price's fraudulent representations proximately caused plaintiffs to lose the total amount of their contributions is supported by the evidence. The jury reasonably inferred that the same fraudulent representations which induced the investors to contribute the cash to close the venture properties also induced them to contribute their pro rata share of the assessments which was lost when Cruce and Cole, refusing to pay their pro rata shares, caused the joint venture to default. We sustain points of error 12, 13, 14, and 15.

In points of error 16, 17, and 18, appellants contend that the trial court erred in overruling plaintiffs' motion for judgment and in entering a take nothing judgment in favor of Hexter-Fair Title Company. Appellants assert that Hexter-Fair is vicariously liable for the actions of B.W. Cruce, Jr. that were within the scope of his duties and authority as an escrow officer of Hexter-Fair. Appellants further argue that the evidence, as a matter of law, conclusively proves that Cruce was acting within the scope of his duties and authority as an escrow officer of Hexter-Fair in improperly disbursing the funds deposited by plaintiffs in the Hexter-Fair escrow account and that such actions vicariously constitute a breach of Hexter-Fair's fiduciary duty to appellants. In this case, the jury found that Cruce was acting as an agent for Price at the time Cruce presented the purchaser's closing statements to appellants. The jury also found that Hexter-Fair breached no fiduciary duty, if any existed, to appellants.

■ Appellants contend there was no evidence to sustain the jury's finding that Cruce was not acting within the scope of his authority as escrow officer of Hexter-Fair when he prepared and delivered the second set of closing statements to the appellants. In evaluating appellants' no-evidence point, we may consider only the evidence and inferences which tend to support the trial court's deemed finding and must disregard all evidence and inferences to the contrary. *Roark v. Allen*, 633 S.W.2d 804, 809 (Tex.1982).

■ The record is replete with evidence that Cruce acted inconsistently with his duties as an escrow officer for Hexter-Fair and, in fact, acted for his own benefit and for the benefit of Price in preparing the second set of closing statements. The evidence further reveals that Cruce misrepresented to each of the appellants that their earnest money would be returned if one-hundred percent participation in the joint venture was not obtained; that each of appellants had been defrauded as a result of those misrepresentations; and that Cruce failed to disclose this information while acting as an agent for Price. The evidence supports the jury findings that at the time Cruce obtained any knowledge of the misdeeds of Price or Cole, he was acting as agent for Price and not for Hexter-Fair. The credibility of the witnesses and the weight to be given to their testimony are matters within the sole discretion of the jury; an appellate court does not have such authority. *Cusack v. Cusack*, 491 S.W.2d 714, 720 (Tex.Civ.App.—Corpus Christi 1973). The jury believed from the evidence that Cruce was acting as the agent of Price at all times material to this law suit.

■ There was ample evidence and numerous jury findings that Price and Cruce had conspired and colluded to cheat the appellants. Since the collusion was between Cruce and Price and since Price was the principal for whom Cruce was acting at

all material times, Hexter-Fair cannot be bound by the knowledge obtained by Cruce as agent for Price. *Mays v. First State Bank of Keller*, 247 S.W. 845 (Tex.Comm'n App.1923, holding approved).

As a general rule, so long as the agent acts within the scope of his employment, in good faith, and for the interest of his principal, the agent is presumed to have disclosed all facts that came to his knowledge. *Mays*, 247 S.W. at 846. The exception to this rule is that the agent's knowledge is not imputed to the principal when the agent engages in fraudulent conduct, as the jury found Cruce did in this case. *Mays*, 247 S.W. at 846.

Because Cruce was acting as a special agent for Hexter-Fair for the limited purpose of closing real estate transactions, any actions taken by him in establishing the joint venture were outside the scope of his authority; therefore the loss must be borne by Price, the principal for whom Cruce was acting. Additionally, "the knowledge of an agent is not imputed to the principal under circumstances where the agent does not acquire his knowledge in the transaction of his principal's business." *Taylor v. Taylor*, 88 Tex. 47, 29 S.W. 1057 (1895). Under the law and the facts of this case, Cruce's knowledge, acquired while working as an agent for Price, cannot be imputed to Hexter-Fair to form the basis for vicarious liability.

Appellant contends that because Cruce was acting for Hexter-Fair when he improperly disbursed funds from the escrow account, Hexter-Fair is liable for Cruce's fraud. Because we hold that Cruce's authority as special agent for Hexter-Fair was limited to closing the real estate transaction and that the knowledge acquired by Cruce while working as an agent for Price cannot be imputed to Hexter-Fair, we overrule points of error sixteen, seventeen, and eighteen.

It would be well to comment on the dissent. While no one would tolerate, much less praise, the lack of morality on behalf of the former County Commissioner,

Price, we are nevertheless bound by the law, under the facts of this case, to address only those issues which have been pleaded. The law in Texas clearly establishes that unless the contract, which is the subject of the suit, is illegal on its face or can be shown to be so by evidence that proves the contract, its illegality must be pleaded. *After Hours Inc. v. Sherrard*, 456 S.W.2d 227 (Tex.Civ.App.—Austin 1970), *rev'd on other grounds*, 464 S.W.2d 87 (Tex.1971). Unlike the dissent, we have not looked beyond the contract sued upon or the evidence by which the contract is proved. We have followed the clear precedent that illegality is an affirmative defense which must be pleaded or it is waived. TEX.R.CIV.P. 94 (Vernon 1979); *City of Galveston v. O'Mara*, 146 S.W.2d 416, 420 (Tex.Civ.App.—Galveston 1940), *aff'd*, 138 Tex. 16, 155 S.W.2d 912 (1941). An appellate court is not authorized to address an issue in the absence of a properly assigned point of error unless the error is fundamental. TEX.R.CIV.P. 451 (Vernon 1979); *Newman v. King*, 433 S.W.2d 420 (Tex.1968). In order to have fundamental error, the record must show that the trial court lacked jurisdiction or that the public interest, as declared in the statutes or Constitution of Texas, is directly and adversely affected. *Pirtle v. Gregory*, 629 S.W.2d 919 (Tex.1982). The record must affirmatively and conclusively disclose such error. *Cain v. Zurich Insurance Co.*, 426 S.W.2d 575 (Tex.Civ.App.—Dallas 1968, no writ). Thus, if examination of the statement of facts is required, no question of fundamental error is presented. *Cain*, 426 S.W.2d at 575; *Lane v. Fair Stores, Inc.*, 150 Tex. 566, 243 S.W.2d 683 (1951).

The appellants are not suing Price for breach of his agreement to supply insider information. In that situation, we would agree that the illegality of the contract would appear on its face and that the Court could *sua sponte* refuse to enforce it. The underlying contracts in this case are the Agreement to Participate in the Hickcox-Castle Property/Joint Venture and the Joint Venture Agreement itself. The dis-

sent does not contend that either of these agreements is illegal or that illegality appears from the evidence necessary to prove them. Instead, the illegality, if any, depends on extraneous facts, discovered, if at all, by the examination of the statement of facts.

The trial court's take nothing judgment in favor of Hexter-Fair Title Company is affirmed. The trial court's take-nothing judgment in favor B.W. Cruce, Jr. and Mesquite Investment Corporation is reversed and we render judgment for appellants in the amounts of the jury award. Therefore, it is ordered that each of the appellants recover the following amounts of actual damages from appellees B.W. Cruce, Jr. and Mesquite Investment Corporation (MIC), jointly and severally:

| | |
|---|---|
| B.J. Kirby | $174,000.00 |
| Robert E. Hogan | 91,000.00 |
| Taylor B. Almon | 66,000.00 |
| Charles R. Hoover | 66,000.00 |
| Phil Clemente | 41,000.00 |
| Ben Sierad | 41,000.00 |

It is further ordered that appellants recover the following amounts of exemplary damages from Cruce, Cole and MIC:

| | CRUCE | MIC |
|---|---|---|
| Kirby | $181,628.58 | $45,407.10 |
| Hogan | 94,984.56 | 23,747.40 |
| Almon | 68,893.53 | 17,223.35 |
| Hoover | 68,893.53 | 17,223.35 |
| Clemente | 42,797.50 | 10,699.37 |
| Sierad | 42,797.50 | 10,699.37 |

It is further ordered that appellants recover their costs of this appeal from appellees Cruce and MIC, jointly and severally. It is ordered that appellee Hexter-Fair recover its costs of this appeal from appellants.

CARVER, J., dissents.

CARVER, Justice, Dissenting.

I adhere to the original unanimous panel opinion holding that, since all the asserted rights of the parties grew out of their common scheme to use Price's inside information as county commissioner regarding the location of a new highway to speculate in lands lying under, or adjacent to, the new highway before the owners, or the public, learned the same information known to Price, the parties' scheme was contrary to public policy and that this court should not adjudicate, but should dismiss, a dispute between the schemers.

Since my brethren, on motion for rehearing, have determined to adjudicate the schemers' dispute, as well as keep silent in their new opinion as to the violation of public policy shouted from this record, I adopt our original opinion, in its entirety but with minor grammatical changes, as my dissent.

B.J. Kirby, Robert E. Hogan, Taylor B. Almon, Charles R. Hoover, Phil Clemente, and Ben Sierad appeal: (1) a judgment, notwithstanding the verdict of the jury, in favor of B.W. Cruce, Jr., David C. Cole, and Mesquite Investment Corporation; and (2) a judgment on the verdict in favor of Hexter-Fair Title Company. Since the rights, if any, of the appealing parties necessarily rest upon their speculation in property on the basis of information obtained from a public servant (accessible to him only because of his office but not accessible to the public), contrary to the public policy of our state, neither the trial court, nor this court, may properly lend itself to the realization of any such claimed right, but should leave such parties in whatever position they have placed themselves. Consequently, I would hold that the trial court erred by adjudicating the suit rather than dismissing it. I would reverse the judgment of the trial court and render a judgment of dismissal.

The record reflects that Dallas County District 2 Commissioner Mel Price initiated a scheme to profit personally from his official knowledge (knowledge not yet known to the public) of the location of a new loop highway through eastern Dallas County by acquiring land both on and adjacent to the right-of-way at a price not yet affected by knowledge of the loop in the owners of the property or knowledge of the loop by competing purchasers.

Price recruited the present appealing parties to share in this scheme, which is evidenced by two exhibits placed in the record by them. The first exhibit was a handwritten letter of Mel Price dated June 21, 1972, which we reproduce as Appendix 1. The second exhibit was an "Agreement to Participate in the Hickox-Castle Property Joint Venture" proposed by "B.W. Cruce Jr., Trustee, for Mel Price" and "approved and agreed to" by individual signatures for a stated percentage by each of the appealing parties, which we reproduce as Appendix 2. The appealing parties also introduced testimony describing a meeting of Price, his trustee Cruce, and all the recruited members of the scheme as follows:

Q All right, did Mr. Price participate in that meeting?

A Mr. Cruce conducted the meeting.

Q Okay, did Mr. Price have anything to say during that meeting that you recall?

A Yes, sir.

Q Could you tell us what that was?

A It was primarily that the land was—the proposed Loop 9 was going to go through the middle of it; even if the alternate route was picked by the highway department it would still be very close to this property which would enhance it whether it went through the property or not, but it was primarily a discussion of the potential of the property and how good it was, and we were going to sell this thing at a profit. It was a get-together meeting more than anything.

It is our duty to determine whether the agreement of the parties to initiate and carry out their scheme was in violation of public policy despite the absence of a pleading in the trial court by any party raising the issue. In *After Hours, Inc. v. Sherrard*, 456 S.W.2d 227, 228 (Tex.Civ.App.—Austin 1970), *rev'd on other grounds*, 464 S.W.2d 87 (Tex.1971), it was held that the illegality of the parties' agreement (tested by its object) may be raised at any stage of the proceedings, or may be raised by the appellate court *sua sponte*. Pleading of

illegality is not required, and the parties may not waive the issue, because the issue is not for their benefit but for the public good. *Westwood v. Continental Can Co.*, 80 F.2d 494 (5th Cir.1935). The actual existence of, or degree of, injury to the public is not material; whether the tendency of the agreement is injurious to the public good is the main question. *Hazelwood v. Mandrell Industries Co.*, 596 S.W.2d 204, 206 (Tex.Civ.App.—Houston [1st Dist.] 1980, writ ref'd n.r.e.). An agreement whose tendency, or object, is to produce a breach of duty of one who stands in a fiduciary relationship is illegal, void, and against public policy because it is the policy of the law to secure fidelity of those holding positions of trust and confidence; or, stated another way, *agreements tending to cause unfaithful conduct by fiduciaries are illegal because they are, in effect, agreements to wrong or defraud the persons whose interests the fiduciaries have in charge. Dial v. Martin*, 37 S.W.2d 166, 188 (Tex.Civ.App.—Amarillo 1931), *rev'd on other grounds*, 57 S.W.2d 75 (Tex. Comm.App.1933, judgmt adopted).

There can be no dispute that public officers, including a county commissioner, are fiduciaries to the public whose interest they have in charge. It cannot be said that a commissioner, Mel Price, served the public in using information coming to him by virtue of his office, to speculate in land under, or adjacent to, the new loop highway, especially when some of that same "public" would be selling the land with an inferior bargaining position; or when other members of that same "public" would be uninformed competitors; or when other members of that same "public" could, subsequently, only buy the land from a speculator who acquired it on "insider" information. Our Legislature codified (from prior court decisions) this type of breach of a public servant's fiduciary duty to the public by condemning it as a crime in the passage of TEX.PENAL CODE ANN. § 39.03 (Vernon 1974), which provided:

(a) A public servant commits an offense if, in reliance on information to

which he has access in his official capacity and which has not been made public, he:

(1) acquires or aids another to acquire a pecuniary interest in any property, transaction, or enterprise that may be affected by the information; or

(2) speculates or aids another to speculate on the basis of the information.

(b) An offense under this section is a Class A misdemeanor.

The Practice Commentary accompanying this section provides, in part, that:

This offense is new to Texas law, but it is analogous to several statutes in the prior law forbidding disclosure of certain insider information, Penal Code arts. 144, 145, 426, and prohibiting a state official from buying claims against the state, art. 368.

The fiscal integrity of the state may be undermined if public servants are permitted to profit from confidential information acquired by virtue of their position. Enrichment of insiders will also disadvantage citizens who deal with the insiders in ignorance, and the temptation to profiteer may motivate public servants to delay, slant, or even falsify information concerning governmental transactions.

However, the Legislature was not the first to recognize, or to condemn, a public servant's similar breach of duty because Penal Code § 39.03 merely codified existing public policy and added the criminal penalty. In *DeLeon v. White*, 9 Tex. 598 (1853), Justice Lipscomb held a land title in a minor, granted by a commissioner who was the minor's father, was void as obtained in violation of public policy. *DeLeon* held that the vice lay in attempting, faithfully, to serve two masters simultaneously. *DeLeon* stated that it relied upon "Mr. Justice Storey" quoting: "It may be correctly said with reference to Christian morality that no man can serve two masters *whose interests are in conflict*" (emphasis added) (citing "Storey on Agency Sec. 210"). While it was in the public's interest (as the master of Mel Price) to have Price locate the new

loop highway to best serve the public and to acquire for the public a right-of-way therefor at the most reasonable price, it was the desire for personal gain (as a different master of Mel Price) that led to Price's scheme, for himself and others, to locate the new loop, and to acquire property through which it passed, for private profit. I would find that the public service due from Mel Price was incompatible with his private profit scheme and that such scheme was violative of public policy so as to deny access to the courts to resolve disputes between the schemers.

Similarly in *Flanikin v. Fokes*, 15 Tex. 180 (1855), Steel was a land commissioner and contracted with Fokes to clear title to her headright certificate for a one-half interest. Flanikin, as assignee of Steel, filed suit to enforce the agreement. The court, relying specifically upon the principles discussed in *DeLeon, supra*, held that the commissioner's *private interest* so displaced the *public's interest* as to make invalid and unenforceable the agreement as a matter of public policy. Likewise, I would hold that, as evidenced by the testimony quoted and the documents attached as appendices 1 and 2, the private interest of Mel Price, and the appealing parties he recruited to his scheme, so displaced the public's interest with which Price was charged to further, that their scheme violated public policy.

The most obvious parallel in its facts and its holding is found in *Wills v. Abbey*, 27 Tex. 202 (1863), wherein a deputy surveyor located a certificate for a league and labor of land and sought to enforce an agreement for ⅓ thereof for his efforts. Justice Bell, for the court, held that:

Public policy required that the officers chosen to locate and survey the public lands should not be permitted *to speculate in them*, or *to acquire interests in them, which would present to such officers the temptation to take advantage of the information which their official positions enabled them to acquire, to the detriment of the holders of certifi-*

*cates generally (Flanikan v. Fokes,* 15 Tex. 180; *DeLeon v. White,* 9 Tex. 598). (emphasis added).

27 Tex. at 204. Likewise, I would hold that public policy requires that county commissioner Mel Price, being chosen to locate a new loop highway, should not be permitted to speculate in the lands lying under or adjacent thereto because he would be, and was, tempted (along with those he recruited to share in the temptation) to take advantage of information which Price's official position enabled him (and them) to acquire, to the detriment of the public.

I would reverse the judgment of the trial court only because it denied relief to the appealing parties rather than dismissing their suit as one upon which the court could not act. *Anaya v. Jacaman,* 505 S.W.2d 952 (Tex.Civ.App.—San Antonio 1974, no writ). I would dismiss the claims of the appealing parties, but the officers of the court whose costs are unsatisfied should be awarded such unpaid costs from the appealing parties and their surety.

APPENDIX I

Mel Price
10159 Coverdale Dr, Dallas, Texas 75238

County Commissioner
District 2

June 21, 1972

Bill, Don, Bill, B.J., Nick, & Geo.,

You won't need anyone to help you decide on this deal! To me this will be the hottest thing to come along. Presently underpriced, _a loop to be announced soon;_* Garland & Rowlett both growing into the area etc — This one should turn in less than 24 months. — This is the one I have been telling you about —

If there want more than what I put down — Only 15% open before I call some of the 25 people that

*Emphasis Added

PLAINTIFF' EXHIBIT
NO. 53

2~

Mel Price
10159 Coveridge Dr., Dallas, Texas 75238

County Commissioner
District 2

have wanted in. If you don't want to play, please say so in 3 days so we can get this one wrapped up

P.S.
25% IS MINE!

CASH REQUIRED FOR PERCENTAGES!

25%   @ 80,333.33   =  (63.4405)

10%   @ 24,100.00   =  (25.3262 Acs)

5%    @ 12,050.00   =  (12.6281 Acs)

APPENDIX II

EXHIBIT H–1

## AGREEMENT TO PARTICIPATE IN THE HICKOX-CASTLE PROPERTY/JOINT VENTURE

B.W. CRUCE, JR., as Trustee is forming a joint venture to acquire approximately 253.-762 acres of land in the Castle, Hickox, Rowlett and Merritt Roads area in Dallas County, Texas, within the municipal boundaries of Rowlett, Texas. This property is presently owned by six different owners.

B.W. CRUCE, JR., Trustee, for MEL PRICE, has negotiated a contract for the purchase of the venture property. The total purchase price would be approximately One Million Eight Thousand Seven Hundred Two Dollars and thirty-six/100 ($1,008,702.36) payable as follows. $241,-000.00 in cash at the time of closing and notes for $771,108.26. All interest is at 7½ %. Down payment of approximately $241,-000.00 leaves $3,405.90 remaining to be used to pay attorney's fees, closing costs, survey costs, title company expenses and to establish a bank account, to be held in trust by the Trustee, to be used as an operating bank account to pay any expenses as they occur, such as engineering fees, taxes, etc. Proper pre-payment privileges and release clauses will be obtained in final contract. Note schedule attached.

The purchase contract generally conforms to standard title company contracts of sale. The Seller is required to furnish an Owner's Title Policy of Insurance and title would be placed in B.W. CRUCE, JR., Trustee.

Your ownership would be an interest of 25 percent (referred to as "your pro-rata share") in the joint venture upon it's formation, in consideration of the following: (1) a cash contribution by you to the joint venture in an amount equal to your pro rata share of the cash required in closing of the purchase of the venture property, shall be paid to B.W. CRUCE, JR., Trustee, as escrow agent, upon execution of this instru-

ment by you, receipt of which is hereby acknowledged, for $1,000.00, the balance of which will be due on five (5) day notice by B.W. CRUCE, JR., on the date of closing, B.W. CRUCE, JR., will transfer all funds deposited with him as escrow agent under the terms of this instrument, to the account of the joint venture or shall expend the same on behalf of the joint venture pursuant to written instructions from the joint venture to do so: (2) on or before closing, you would be required to sign notes in the total amount of approximately $771,108.26 made payable to the various owners of the 6 tracts involved. (3) B.W. CRUCE, JR., shall be the Trustee for the joint venture and shall be responsible for the management of the property.

Any expense incurred by B.W. CRUCE, JR., Trustee on behalf of this joint venture, such as legal fees, accounting fees or engineering fees, shall be charged to the joint venture: (4) cash required for closing will be $241,000.00 of which your pro-rata share shall be $_____.

Some of this property is presently zoned residential but it is anticipated that better zoning can be obtained if and when it is applied for. All properties are near anticipated route of Loop 9.* Utilities serve (or are financed to serve) these properties.

If, within a reasonable length of time, B.W. CRUCE, JR., Trustee, is unable to obtain commitments for participation in the joint venture on the basis set forth in this instrument for one hundred (100) percent interest in the joint venture, or if he is unable to complete the valid contract, then he will notify you in writing of this, returning with the notice, the amount of your earnest money deposited and neither party shall have any further obligation or liability hereunder. In the event you should default in the performance of any obligation to be performed by you hereunder, B.W. CRUCE, JR., Trustee for other parties in the joint venture, may, at their option, retain the earnest money deposited by you and terminate your right to participate in

the joint venture or pursue any other legal remedies, either at law or in equity, which they may have by reason of your default.

If the foregoing represents your understanding of our agreement, please so indicate by signing the copy of the instrument and returning same together with your check payable to B.W. CRUCE, JR., Trustee in the amount of $1,000.00

> Yours Very Truly,
> /s/  B.W. Cruce, Jr.
> B.W. Cruce, Jr., Trustee
> Attorney for Mel Price

APPROVED AND AGREED TO:

This 27 day of June, 1972.

By: B.J. Kirby